1          UNITED STATES BANKRUPTCY COURT

2          SOUTHERN DISTRICT OF CALIFORNIA

3          JUDGE MARGARET M. MANN, PRESIDING

4

5    IN THE MATTER OF:              NO. 10-11296-MM

6                                   ADV: 10-90308

7    CESAR M. DOBLE

8    CESAR M. DOBLE V. DEUTSCHE BANK NATIONAL TRUST COMPANY,

9    AS TRUSTEE & ONEWEST BANK, FSB

10

11   1)  MOTION TO VACATE CLERK'S ENTRY OF DEFAULT AGAINST

12   DEUTSCHE BANK NATIONAL TRUST COMPANY FILED BY DEFENDANT

13   2)  MOTION TO DISMISS COMPLAINT AGAINST DEUTSCHE BANK

14   NATIONAL TRUST COMPANY FILED BY DEFENDANT

15

16

17          REPORTER'S TRANSCRIPT OF PROCEEDING

18

19          SAN DIEGO, CALIFORNIA

20          THURSDAY, DECEMBER 16, 2010

21

22   U.S. BANKRUPTCY COURT        BY COLLETTA BROOKS, CSR,RPR
     DEPARTMENT ONE               CSR NO. 12589
23   325 WEST F STREET            SAN DIEGO BANKRUPTCY REPORTERS
     SAN DIEGO, CA 92101          325 WEST F STREET
24                                SAN DIEGO, CA 92101
                                  (619) 741-0933
25

```
 1   APPEARANCES:

 2

 3   FOR THE DEFENDANTS:

 4                       MALCOLM, CISNEROS

 5                       BY:  DAMIAN RICHARD

 6                       2112 BUSINESS CENTER DRIVE

 7                       SECOND FLOOR

 8                       IRVINE, CALIFORNIA 92612

 9                       (949) 252-9400

10

11                       MALCOLM, CISNEROS

12                       BY:  WILLIAM G. MALCOLM

13                       2112 BUSINESS CENTER DRIVE

14                       SECOND FLOOR

15                       IRVINE, CALIFORNIA 92612

16                       (949) 252-9400

17

18   FOR THE PLAINTIFF:

19                       LAW OFFICE OF DAVID A. ST. JOHN

20                       BY:  DAVID A. ST. JOHN

21                       309 SOUTH A STREET

22                       OXNARD, CALIFORNIA 93030

23                       (805) 486-8000

24

25
```

1   SAN DIEGO, CALIFORNIA, THURSDAY, DECEMBER 16, 2010

2

3       MR. ROBINSON:  IN THE MATTER OF *CESAR DOBLE V.*

4   *DEUTSCHE BANK NATIONAL TRUST & ONEWEST BANK*, MOTION TO

5   VACATE CLERK'S ENTRY OF DEFAULT AND MOTION TO DISMISS

6   COMPLAINT AGAINST DEUTSCHE BANK.

7              APPEARANCES, PLEASE.

8       MR. RICHARD:  GOOD AFTERNOON, YOUR HONOR.  DAMIAN

9   RICHARD ON BEHALF OF ONEWEST BANK AND DEUTSCHE BANK

10  NATIONAL TRUST COMPANY, THE DEFENDANTS.

11      MR. ST. JOHN:  GOOD AFTERNOON, YOUR HONOR.  DAVID

12  ST. JOHN ON BEHALF OF CESAR DOBLE, THE PLAINTIFF.

13      THE COURT:  THANK YOU, COUNSEL.

14              AS YOU PROBABLY BOTH ARE AWARE, THE COURT HAD

15  ISSUED A TENTATIVE YESTERDAY WITH REGARD TO CERTAIN

16  FACTUAL ISSUES THAT IT WOULD LIKE ADDRESSED THAT SEEM TO

17  BE RAISED BY ISSUE IN THIS CASE.

18              SO I WANTED, I THINK, TO START WITH YOU,

19  MR. ST. JOHN, REGARDING THE LOAN MODIFICATION STATUS.

20      MR. ST. JOHN:  YES, YOUR HONOR.  FROM THE --

21              WE HAD CHECKED WITH THE SERVICER PRIOR TO

22  FILING THIS CASE AS TO THE SALE DATE, AND WHICH WAS

23  PENDING AT THAT TIME, AND HAD ASKED THAT THAT DATE, IN

24  VIEW OF THE PENDING MODIFICATION, THAT THAT DATE BE

25  TAKEN OFF, THE SCHEDULED DATE, BECAUSE WE WERE ADVISED

1   THAT WAS NOT GOING TO HAPPEN.  AND IT WAS BECAUSE OF

2   THAT THAT WE HAD TO FILE AND PROCEED WITH THIS CASE.  WE

3   WILL PRESENT A DECLARATION TO THAT EFFECT.  WE ACTUALLY

4   CALLED TWICE.  AND SO AS FAR AS WE WERE CONCERNED, THE

5   FORECLOSURE WAS PROCEEDING.  WE HAVE HAD NUMEROUS CASES,

6   YOUR HONOR, WHICH --

7        THE COURT:  MR. ST. JOHN, LET ME INTERRUPT.  ARE YOU

8   SAYING, DID THE DEBTOR MAKE ANY PAYMENTS ON THE LOAN

9   MOD?

10       MR. ST. JOHN:  YES.

11       THE COURT:  DID THEY MAKE THE PAYMENTS AFTER THE

12  INITIAL PAYMENT?

13       MR. ST. JOHN:  I BELIEVE THEY DID.

14       THE COURT:  AND THOSE PAYMENTS WERE SENT TO THE

15  SERVICER.

16       MR. ST. JOHN:  YES.  YES.

17       THE COURT:  OKAY.  AND SO I THINK THAT THE TESTIMONY

18  WAS BY DECLARATION THAT THE LOAN MOD PACKAGE WAS SENT

19  BACK IN JUNE.

20       MR. ST. JOHN:  YES, YOUR HONOR.

21       THE COURT:  AND THEN YOU BELIEVE THERE'S ANOTHER

22  PAYMENT THAT WAS MADE IN JULY.

23       MR. ST. JOHN:  I BELIEVE THERE WERE THREE PAYMENTS

24  THAT WERE MADE ALTOGETHER.

25       THE COURT:  ALL RIGHT.

1      MR. ST. JOHN:  BUT NOW MR. DOBLE, I MUST SAY THAT

2    MR. DOBLE'S MOTHER PASSED AWAY ON THE 22ND OF LAST

3    MONTH.  HE HAD TO LEAVE THE COUNTRY.  SHE WAS THE LAST

4    OF HIS PARENTS ALIVE, SO THAT REQUIRED THAT HE ATTEND TO

5    WRAP UP A LOT OF MATTERS.

6           WHERE HE IS, IS HE WILL NOT RETURN TO THIS

7    COUNTRY UNTIL THE FIRST WEEK IN JANUARY.  SO HIS WIFE,

8    MRS. MARTHA DOBLE, IS NOT AS AVAILABLE TO US AT THIS

9    TIME.  WE NEED TO DOUBLE CHECK SOME OF THESE THINGS I

10   SAW IN THE TENTATIVE, SUCH AS THE COURT WANTED AN

11   ACCOUNTING, AND THEN THE ACTUAL DETAILS AS FAR AS THE

12   LOAN MODIFICATION, I WOULD NEED TO CLARIFY, BUT MY

13   UNDERSTANDING IS THAT ALL THREE PAYMENTS WERE MADE.

14      THE COURT:  OKAY.  AND DO YOU HAVE A COPY OF THE

15   LOAN MODIFICATION AGREEMENT?

16      MR. ST. JOHN:  YES, I DO.

17      THE COURT:  OKAY.  AND DO YOU HAVE THE DATE IT WAS

18   ENTERED INTO?

19      MR. ST. JOHN:  YES.

20      THE COURT:  AND THEREFORE WHEN THE TRIAL LOAN

21   MODIFICATION PERIOD WAS.  WHAT YOU'RE SAYING IS YOU

22   CAN'T PROVIDE THE COURT THAT EVIDENCE UNTIL THE FIRST

23   WEEK IN JANUARY?

24      MR. ST. JOHN:  WELL, I HAVE SOME OF IT.  PROBABLY I

25   HAVE ALL OF IT.  THE ONLY THING THAT I DON'T HAVE IS HIS

 1   DECLARATION AS TO CONTACTING THE SERVICER TO TAKE THIS

 2   SALE DATE OFF.

 3       THE COURT:  OKAY.  WHAT I'M ASKING IS REALLY ABOUT

 4   THE DETAILS OF THE LOAN MODIFICATION.

 5       MR. ST. JOHN:  I CAN PROVIDE THAT, YOUR HONOR.

 6       THE COURT:  OKAY.  THANK YOU.

 7           MR. RICHARDSON.

 8           AND I SHOULD ASK WHEN CAN YOU GET ME THAT

 9   DECLARATION?

10       MR. ST. JOHN:  HE WILL BE BACK THE FIRST WEEK IN

11   JANUARY.  I BELIEVE JANUARY THE 10TH IS THE SECOND

12   MONDAY OF JANUARY.  AND THAT'S WHEN I EXPECT --

13           LET ME LOOK.  YES.  I EXPECT HIM TO RETURN TO

14   THIS COUNTRY ON JANUARY 10TH.  AND THEN I WOULD --

15           I'LL TRY TO WORK THROUGH HIS WIFE PRIOR TO

16   THAT, BUT I'D SAY THAT WEEK.

17       THE COURT:  ALL RIGHT.  SO I'M GOING TO REQUIRE THAT

18   YOU PROVIDE A DECLARATION WITH THAT INFORMATION NO LATER

19   THAN JANUARY 14TH.

20       MR. ST. JOHN:  OKAY.  THANK YOU, YOUR HONOR.

21       THE COURT:  THANK YOU.

22           ALL RIGHT.  MR. RICHARDSON.

23       MR. RICHARD:  THERE WAS TWO MODIFICATIONS:  YOU HAVE

24   A TRIAL PERIOD PLAN, THEN YOU HAVE THE ACTUAL FORMAL

25   FINAL MODIFICATION.  THE TRIAL PERIOD PLAN WAS ENTERED

1    INTO IN JANUARY OF 2010.  THAT'S WHEN IT WAS OFFERED AND

2    SIGNED BY THE DEBTORS.  THE PAYMENTS BEGAN IN FEBRUARY.

3    FEBRUARY 1ST WAS THE FIRST PAYMENT.  MARCH 1ST WAS THE

4    SECOND PAYMENT.

5        THE COURT:  I'M SORRY.  CAN YOU SLOW DOWN A LITTLE

6    BIT.

7        MR. RICHARD:  SORRY.

8        THE COURT:  PAYMENTS BEGAN?

9        MR. RICHARD:  FEBRUARY 1ST, 2010.  AND IT CALLED FOR

10   THREE MONTHS' CONSECUTIVE PAYMENTS.  THE DOBLES MADE THE

11   FIRST PAYMENT FEBRUARY 1ST, AND THE SECOND PAYMENT ON

12   MARCH 1ST, BUT THEY NEVER MADE THEIR APRIL 1ST PAYMENT.

13   THEY DIDN'T MAKE IT IN MAY, BUT THEY DID FINALLY MAKE IT

14   IN JUNE.  AND IT CAME IN ON JUNE 16TH.

15       THE COURT:  SO OKAY.  THEY DIDN'T MAKE THE APRIL 1ST

16   PAYMENT.  THEY MADE THE MAY PAYMENT.

17       MR. RICHARD:  SORRY.  MARCH PAYMENT.

18       THE COURT:  SO THEY MADE MARCH?

19       MR. RICHARD:  FEBRUARY, MARCH.  DID NOT MAKE APRIL

20   PAYMENT OF THE THREE-MONTH TRIAL PERIOD PLAN.

21       THE COURT:  OKAY.

22       MR. RICHARD:  WHEN THEY WERE ORIGINALLY ISSUED THE

23   TRIAL PERIOD PLAN, IT COMES WITH THE PAPERWORK FOR THE

24   FINAL MODIFICATION.  BUT THERE'S A LETTER AND --

25       THE COURT:  WHAT HAPPENED?  YOU SAID SOMETHING ABOUT

1   MAY.

2       MR. RICHARD:  THEY DIDN'T MAKE --

3           THEY WAITED --

4           THE BANK WAITED THROUGH MAY.  AND THERE WASN'T

5   A PAYMENT.  THEY WAITED THROUGH THE FIRST TWO WEEKS OF

6   JUNE, AND THERE STILL WASN'T THAT THIRD TRIAL PERIOD

7   PLAN PAYMENT.

8       THE COURT:  OKAY.

9       MR. RICHARD:  AND THERE WAS SOME POINT BETWEEN APRIL

10  WHEN THEIR APRIL PAYMENT DID NOT COME IN, LET'S SAY THE

11  FIRST WEEK OF APRIL, AND WHEN THAT, YOU KNOW, THEY

12  WAITED TO A CERTAIN EXTENT, BUT IN LATE MAY OR EARLY

13  JUNE, THE BANK MADE THE DECISION THAT THEY HAD FAILED TO

14  MAKE THE THIRD PAYMENT, SO THEY DID NOT COMPLETE THE

15  TRIAL MODIFICATION PLAN.  AND THEN YOU HAVE THE LETTER,

16  WHICH THE COURT HAS ALREADY, THE DENIAL LETTER THAT WENT

17  OUT IN AUGUST.

18      THE COURT:  OKAY.

19      MR. RICHARD:  THE LAST PAYMENT DID COME IN ON

20  JUNE 16, 2010.  BUT IT WAS TWO-AND-A-HALF MONTHS LATE.

21  AND BY THAT POINT, THEY HAD FAILED TO FULFILL THEIR

22  OBLIGATIONS UNDER THE TRIAL PERIOD PLAN.  THE BANK HAS

23  THAT PAYMENT.  THEY HAVE NOT POSTED THAT PAYMENT.  IT'S

24  BEEN IN A SUSPENSE ACCOUNT.  AND THAT PAYMENT COULD BE

25  USED AS A FIRST OF ANOTHER THREE-MONTH TRIAL PERIOD PLAN

1    IF THE DEBTORS ARE INTERESTED.

2          SO THE COURT HAS IN ITS RECORD, THE DECLARATION

3    FROM CHARLES BOYLE, WHICH HAS THE DENIAL LETTER THAT

4    WENT OUT THAT SUMMER IN AUGUST BECAUSE THEY WAITED

5    TWO-AND-A-HALF MONTHS FOR THAT THIRD TRIAL PERIOD PLAN.

6    SO YOU HAVE THE DENIAL, AND THEN YOU HAVE THE SUBSEQUENT

7    FORECLOSURE ACTIVITY.  AND THAT'S HOW WE GOT HERE TODAY.

8    I CAN DISCUSS --

9          I'M PREPARED TO ADDRESS ALL THE OTHER POINTS

10   THAT YOU'VE RAISED IN THE MOST RECENT TENTATIVE.  SO --

11      THE COURT:  OKAY.  WHY DON'T WE DO THAT.

12      MR. RICHARD:  WOULD YOU LIKE ME TO GO INTO THE

13   DEFAULT?

14      THE COURT:  YES.

15      MR. RICHARD:  OKAY.  SO THE FORECLOSURE PROCEDURE

16   WAS REINITIATED AFTER THE TRIAL PLAN FAILED.  AND WHEN

17   THE BANKRUPTCY WAS FILED --

18      THE COURT:  WAIT.  I'M SORRY.

19          OKAY.  SO YOU SAID THIS IS THE SECOND LOAN

20   MODIFICATION SITUATION?

21      MR. RICHARD:  THERE'S ONLY ONE THAT I'M AWARE OF.

22      THE COURT:  OKAY.

23      MR. RICHARD:  BECAUSE THE TRIAL PERIOD PLAN WAS NOT

24   FULFILLED, THEY NEVER REACHED A FINAL MODIFICATION.

25      THE COURT:  OKAY.

1    MR. RICHARD:  SO FORECLOSURE PROCEEDINGS WERE

2  REINITIATED.  AND THAT I THINK IS --

3        I DON'T HAVE ANYTHING IN THE RECORD TO DISPUTE

4  WHAT HE'S SAYING THAT HE CALLED THE TRUSTEE.  THAT IS

5  QUITE POSSIBLE.

6        BUT IT WAS BECAUSE OF THE FAILED MODIFICATION

7  TRIAL PERIOD PLAN THAT THEY REINITIATED THE FORECLOSURE

8  PROCEEDINGS.

9        SO YOU HAVE THE FILING OF THIS ADVERSARY.  AND

10 AS THE DECLARATION OF CHARLES BOYLE INDICATES, WHEN IT

11 WAS SERVED ON DEUTSCHE BANK, PURSUANT TO THEIR AGREEMENT

12 WITH THE SERVICER, ONEWEST, IT WAS FORWARDED TO THE

13 PASADENA OFFICE OF ONEWEST BANK, WHICH IS THEIR

14 HEADQUARTERS OF THEIR LEGAL DEPARTMENT.  HOWEVER, ALL

15 LITIGATION IS HANDLED IN THEIR OFFICE IN AUSTIN, TEXAS.

16 THAT'S WHERE THEY HAVE THEIR DEFAULT LITIGATION GROUP.

17 IT WAS AT THE PASADENA OFFICE THAT THE BANKRUPTCY

18 ADVERSARY CAME IN AND WAS TREATED MORE LIKE ANOTHER

19 BANKRUPTCY FILING WHERE YOU WOULD MAYBE ASSIGN IT

20 THROUGH LPS FOR A PROOF OF CLAIM OR PERHAPS A MOTION FOR

21 RELIEF.  IT WAS NOT TREATED AS AN ACTUAL COMPLAINT WHERE

22 YOU WOULD HAVE TO RESPOND WITHIN THE TIME INDICATED ON

23 THE SUMMONS.  AND AS THE DECLARATION POINTS OUT, IT WAS

24 HELD UP IN LPS AND SHOULD NEVER HAVE BEEN PUT INTO LPS,

25 BUT IT WAS HELD UP IN LPS.  AND WHEN IT FINALLY DID

1    REACH LOCAL COUNSEL, THE DEFAULT HAD ALREADY BEEN TAKEN.

2          THERE WERE DATES IN THE LPS SYSTEM, BUT THOSE

3    ARE NOT DATES PUT IN THERE BY AN ATTORNEY.  IT'S NOT PUT

4    IN BY ANY PERSON WHO ACTUALLY ASSESSES THE SUMMONS AND

5    SAYS:  HERE'S YOUR RESPONSE DATE.  THOSE DATES ARE

6    AUTOMATED JUST TO GET THE VENDOR, THE LOCAL COUNSEL, TO

7    RESPOND TO THE TASK THAT'S PUT IN THERE THROUGH LPS.

8          ONCE IT GOT TO THE LAW FIRM OF BURNETT &

9    MATTHEWS, THAT FIRM PRIMARILY WORKS WITH PROOF OF CLAIMS

10   AND MOTIONS FOR RELIEF, THEY REFERRED THE CASE TO OUR

11   FIRM.  WE DO A LOT OF LITIGATION.

12         AND WE HAVE MOVED TO SET ASIDE THE DEFAULT

13   BASED ON THE EXCUSABLE NEGLECT OF ONEWEST IN NOT

14   PROCESSING THAT ADVERSARY COMPLAINT IN A TIMELY MANNER.

15     THE COURT:  SO LET ME UNDERSTAND.  WHAT YOU'RE

16   SAYING IS THAT IT WENT FIRST TO BURNETT & MATTHEWS.  AND

17   THEN THEY REFERRED IT TO YOU?  YOUR FIRM?

18     MR. RICHARD:  YES.  ONCE THEY RECOGNIZED THAT THIS

19   WAS, YOU KNOW, WITH THE AUTHORITY FROM THE CLIENT OF

20   DEUTSCHE BANK AND ONEWEST, ONCE THEY REALIZED THAT THIS

21   IS AN ADVERSARY COMPLAINT WHERE DEFAULT WAS ALREADY BEEN

22   TAKEN, BOTH ONEWEST AND DEUTSCHE BANK ASKED US TO

23   REPRESENT THEM IN THE ADVERSARY.

24     THE COURT:  OKAY.  SO AND BURNETT & MATTHEWS, YOU

25   SAID, JUST DEALS WITH PROOFS OF CLAIM AND RELIEF FROM

1   STAY?

2      MR. RICHARD:  I DON'T KNOW THE SCOPE OF THEIR

3   PRACTICE AREAS, BUT MY UNDERSTANDING WAS WHEN THEY WERE

4   REFERRED THIS CASE THROUGH LPS, THEY RECEIVE A LOT OF

5   LPS REFERRALS FOR, PERHAPS, LIKE A PROOF OF CLAIM OR A

6   MOTION FOR RELIEF.  YOU'RE NEVER SUPPOSED TO USE LPS FOR

7   AN ADVERSARY COMPLAINT.

8         SO FROM THE BEGINNING, THERE WAS A MISTAKE MADE

9   BY PUTTING THIS INTO LPS, WHICH CAUSED THE DELAY.  ONCE

10  THEY RECOGNIZED THAT WE HAVE AN ADVERSARY COMPLAINT,

11  THAT THE TIME TO RESPOND HAS PASSED AND A DEFAULT HAS

12  BEEN REQUESTED, THEN THROUGH DEUTSCHE BANK AND ONEWEST,

13  IT WAS REFERRED TO OUR FIRM TO RESPOND TO THIS ADVERSARY

14  COMPLAINT AND REQUEST THE DEFAULT.

15     THE COURT:  SO IT WAS REFERRED TO BURNETT &

16  MATTHEWS.  THAT WAS AROUND THE 4TH OF AUGUST.  THEN IT

17  WAS RE-REFERRED TO YOUR FIRM?

18     MR. RICHARD:  YES.

19     MR. MALCOLM:  YOUR HONOR, IF I MAY, I'D LIKE TO MAKE

20  AN APPEARANCE.

21     THE COURT:  YES, YOU MAY.

22     MR. MALCOLM:  THANK YOU.

23         MY NAME IS BILL MALCOLM OF MALCOLM, CISNEROS.

24  MY APOLOGIES FOR BEING LATE.  I WAS IN JUDGE TAYLOR'S

25  COURTROOM, SO --

1    THE COURT:  YES.  I WAS AWARE OF THAT.

2    MR. ROBINSON:  REPRESENTING WHOM, SIR?

3    MR. MALCOLM:  REPRESENTING ONEWEST BANK.

4    MR. ROBINSON:  THANK YOU.

5    MR. MALCOLM:  THANK YOU.

6        WE DO A LOT OF WORK FOR ONEWEST BANK.  AND THE

7  REASON I WANTED TO STEP UP TO THE PODIUM IS BECAUSE I

8  KNOW INTIMATELY HOW THEY PROCESS THEIR LITIGATION,

9  WHETHER IT BE A STATE COURT LITIGATION, A FEDERAL COURT

10 LAWSUIT, OR AN ADVERSARY PROCEEDING.  IT IS PROCESSED

11 OUT OF AUSTIN.  THAT'S THEIR SERVICING SITE.  I'VE BEEN

12 THERE SO I KNOW IT WELL.  PASADENA IS THE OLD INDYMAC

13 BANK HEADQUARTERS.  AND WHEN ONEWEST BANK PURCHASED THE

14 ASSETS OF INDYMAC FROM THE FDIC, IT TOOK OVER THE

15 HEADQUARTERS IN PASADENA.  AS I RECALL, THE ADVERSARY

16 PROCEEDING WAS SERVED BY CT CORP.  I COULD BE WRONG

17 ABOUT THAT.  BUT IT WAS SERVED IN PASADENA.  AND IT WAS

18 LOGGED IMPROPERLY THROUGH THE LPS SYSTEM, WHICH IS WHAT

19 MR. RICHARD WAS JUST SAYING.

20   THE COURT:  IS THAT A SEPARATE VENDOR?  OR IS IT

21 SIMPLY A SOFTWARE SYSTEM USED BY ONEWEST?

22   MR. MALCOLM:  LPS?

23   THE COURT:  YES.

24   MR. MALCOLM:  IT IS CALLED LENDER PROCESS SERVICES,

25 I THINK.  AND IT IS A VENDOR OF SORTS.  THEY AREN'T

1    LAWYERS.  IT'S AN ENTITY OWNED BY FIDELITY, I BELIEVE,

2    FIDELITY NATIONAL TITLE COMPANY, BUT IT IS BOTH A

3    SOFTWARE SYSTEM AND BACKED BY EMPLOYEES.  SO THERE ARE A

4    LOT OF PROCESSORS IN THE LPS SYSTEM IN THE LPS COMPANY.

5             AND WHAT HAPPENED HERE, AS BEST AS I CAN TELL,

6    IS THAT IT WAS, AND I BELIEVE THAT THIS IS IN THE

7    RECORD, BUT THE ADVERSARY PROCEEDING WAS SERVED IN

8    PASADENA AND SOMEHOW GOT INTERTWINED IN THE LPS SYSTEM,

9    WHICH IT SHOULD NOT HAVE BEEN DONE BECAUSE IT'S NOT A

10   MATTER THAT IS REFERRED THROUGH THE LPS SYSTEM FOR

11   ONEWEST BANK.

12      THE COURT:  SO DOES IT GO TO LPS, OR WHAT HAPPENS TO

13   IT?

14      MR. MALCOLM:  WHAT SHOULD HAVE HAPPENED WAS THAT THE

15   COMPLAINT SHOULD HAVE BEEN SENT DIRECTLY TO AUSTIN.  AND

16   IT IS ONEWEST BANK'S POLICY TO NEVER REFER A MATTER

17   UNTIL IT HAS BEEN OFFICIALLY SERVED.  AND SO AS SOON AS

18   IT HAD BEEN SERVED IN PASADENA, IT SHOULD HAVE BEEN

19   DELIVERED TO AUSTIN, AT WHICH TIME IT WOULD HAVE BEEN

20   SENT BY THE LITIGATION DEPARTMENT TO AN ATTORNEY, NOT

21   THROUGH THE LPS SYSTEM.

22             SO I THINK THERE WAS SOME CONFUSION ABOUT THE

23   ADVERSARY PROCEEDING BEING SOMETHING ELSE THAT MIGHT BE

24   A VOLUME-TYPE ISSUE IN THE BANKRUPTCY CASE, LIKE A PROOF

25   OF CLAIM OR LIKE A MOTION FOR RELIEF FROM STAY.  AND I

1   DO KNOW BURNETT & MATTHEWS FAIRLY WELL.  AND WHILE THEY

2   ARE A VERY SOPHISTICATED FIRM, THEY DON'T HANDLE

3   LITIGATION WORK AS A RULE, I DON'T BELIEVE, FOR ONEWEST

4   BANK.  THEY RECEIVE REFERRALS FOR ONEWEST BANK THROUGH

5   THE LPS SYSTEM FOR MOTIONS, RELIEF FROM STAY, AND PLAN,

6   CHAPTER 13 PLAN-TYPE ISSUES, WHICH MIGHT ALSO INCLUDE A

7   PROOF OF CLAIM.

8       THE COURT:  OKAY.  ALL RIGHT.  YOU MAY PROCEED,

9   EITHER ONE OF YOU, WITH THE COURT'S QUESTIONS.

10      MR. RICHARD:  WITH REGARD TO THE OWNERSHIP OF THE

11  NOTE, ONEWEST --

12      THE COURT:  ACTUALLY, I'VE GOT ONE MORE ON WHAT

13  HAPPENED WHEN THE SERVICE WAS MADE, AND THAT IS WHAT'S

14  BEFORE THE COURT, THE EXHIBIT 1, WHICH IS ATTACHED TO

15  MR. MATTHEWS' DECLARATION, WAS THE LPS FORM, WHICH I

16  DON'T KNOW IF EITHER OF YOU HAVE THAT IN FRONT OF YOU.

17      MR. RICHARD:  WE DO, YOUR HONOR.  THIS IS WHAT LPS

18  LOOKS LIKE.  IT'S A SCREEN.  YOU HAVE THE PROCESSORS AT

19  LPS PUTTING IN, SCANNING, UPLOADING THE DOCUMENTATION,

20  AND THEN REFERRING IT TO LOCAL COUNSEL.

21          IF YOU LOOK AT 4, THAT, I THINK, IS THE

22  OPERATIVE -- THE ENTRY NUMBER 4 -- WHERE IT SAYS:  SEVEN

23  DAYS.  YOU HAVE IT SENT OUT ON THE 4TH.  IT INDICATES

24  THAT IT WAS RECEIVED ON THE 4TH.  AND THAT IS THE

25  TESTIMONY, THE DECLARATION, OF ARTURO MATTHEWS THAT HIS

1   FIRM DID RECEIVE THE ADVERSARY.

2          BUT IF I GLEAN CORRECTLY FROM THE COURT'S TWO

3   TENTATIVES, THAT 8-20 DUE DATE, THAT IS NOT A DUE DATE

4   THAT AN ATTORNEY LOOKED AT.  ANYONE THAT READ THE

5   SUMMONS DID NOT CREATE THAT DUE DATE.  THAT DUE DATE OF

6   8-20 IS CREATED BY THE LPS PROCESSOR JUST TELLING LOCAL

7   COUNSEL TO RESPOND TO THIS, YOU KNOW, COMPLETE THIS

8   TASK, BY 8-20.  BETWEEN 8-4 AND 8-11, YOU HAVE ARTURO

9   MATTHEWS ANALYZING THE SUMMONS AND COMPLAINT, REALIZING

10  THAT THEY ARE BEYOND THE DEFAULT THAT HAS ALREADY BEEN

11  ENTERED, AND COMMUNICATING WITH MR. ST. JOHN REQUESTING

12  THAT IT BE SET ASIDE.

13     THE COURT:  SO WHY IF LPS, AND THIS IS EXHIBIT, THE

14  LPS FORM ATTACHED TO MR. MATTHEWS' DECLARATION, IF THEY

15  DON'T TYPICALLY HANDLE BANKRUPTCY ADVERSARIES, WHY DOES

16  THE FORM SAY:  "BANKRUPTCY ADVERSARY"?

17     MR. RICHARD:  THEY ENTERED IT IN, I MEAN, IT WOULD

18  BE A DECLARATION TO THAT EFFECT THAT THEY DON'T, IT'S

19  ONEWEST'S POLICY THAT COMPLAINTS, WHETHER THEY'RE

20  ADVERSARIES OR CIVIL COMPLAINTS, BE REFERRED DIRECTLY

21  FROM AUSTIN TO LOCAL COUNSEL NOT USING LPS.  LPS IS A

22  NATIONWIDE COMPANY.  THEY SERVE A LOT OF DIFFERENT

23  LENDERS.  MAYBE OTHER LENDERS DO USE LPS FOR ADVERSARY

24  COMPLAINTS.  MAYBE THERE IS A, YOU KNOW, A WAY TO

25  POPULATE IT SO THAT YOU PUT IT UNDER ADVERSARY.

1           BUT ONEWEST, AS A MATTER OF POLICY, DOES NOT

2     WANT TO USE LPS FOR ADVERSARY COMPLAINTS AND DID NOT

3     INTEND TO USE IT.

4         THE COURT:  OKAY.  HOW --

5         MR. RICHARD:  JUST BY WAY OF EXPLANATION, IF YOU

6     LOOK AT NUMBER 1, "CLIENT NOTIFIED OF ADVERSARY," THAT

7     DATE IS AUGUST 4TH.  BUT NO ONE IS DISPUTING THE FACT

8     THAT ONEWEST WAS SERVED IN PASADENA AT THEIR LEGAL

9     OFFICE IN OR AROUND THE FIRST WEEK OF JULY.  SO IT'S,

10    YOU KNOW, INHERENTLY FLAWED, THIS REFERRAL, FROM THE

11    VERY BEGINNING.  I JUST SHOW THAT AS, YOU KNOW, FROM THE

12    VERY BEGINNING IT WAS ENTERED INCORRECTLY.

13        THE COURT:  OKAY.  AND I HAD UNDERSTOOD, I THINK

14    IT'S FROM MR. BOYLE'S FIRST DECLARATION, WAS THAT

15    SOMETIME, YOU KNOW, LATE JULY OR EARLY AUGUST THAT A

16    SUPERVISOR REALIZED THE ERROR THAT THIS WAS AN ADVERSARY

17    PROCEEDING AND SHOULDN'T HAVE BEEN ENTERED THERE.

18           BUT IT SEEMS THAT BY KIND OF HAVING THIS FORM,

19    IT LOOKS LIKE LPS IS FIRST ENTERED INTO A SYSTEM.  THIS

20    IS THE REFERRAL SYSTEM, ON 8-4, AND IT WAS SENT NOT TO

21    LITIGATION COUNSEL, BUT TO BURNETT & MATTHEWS, WHICH, AS

22    YOU SAID, ISN'T LITIGATION COUNSEL.  SO IT DOESN'T LOOK

23    LIKE WE HAVE A SUPERVISOR REALIZING THIS IS A PROBLEM

24    UNTIL MR. MATTHEWS LOOKED AT IT.  BECAUSE ALL THAT THIS

25    HANDLING SEEMED TO DO IS CREATE MORE DELAY.

1    MR. RICHARD:  I DON'T THINK MR. BOYLE COULD

2    EXPLAIN --

3         WELL, I DON'T WANT TO TRY TO SUGGEST WHAT

4    MR. BOYLE COULD OR COULD NOT EXPLAIN, BUT YOU DON'T HAVE

5    ANY ACTIVITY BETWEEN RECEIVING THE ADVERSARY COMPLAINT

6    AND THE FIRST WEEK OF JULY AND THEN PUTTING IT IN LPS.

7    SO SOMEHOW IT WAS MISPLACED AND GOT INTO THE LPS BOX,

8    AND THEN SOMEONE MADE THAT DECISION TO PUT IT INTO

9    LPS --

10    THE COURT:  SO LPS --

11    MR. RICHARD:  -- AND SAID WE NEED TO REFER THIS TO

12    LOCAL COUNSEL, NOT KNOWING THAT YOU'RE NOT SUPPOSED TO

13    USE LPS TO REFER AN ADVERSARY COMPLAINT TO LOCAL

14    COUNSEL.

15    THE COURT:  SO REALLY WE DON'T HAVE ANY EXPLANATION

16    FROM THE DATE OF SERVICE UNTIL AUGUST 4TH, BASED ON THIS

17    FORM.

18    MR. RICHARD:  BASED ON THIS FORM, I DON'T THINK WE

19    DO.  I COULD REREAD THE DECLARATION OF CHARLES BOYLE.  I

20    THOUGHT HE ADDRESSED SOME OF THAT.  I KNOW THAT THEY

21    HAVE THE NAME OF THE INDIVIDUAL WHO INITIALLY LOGGED IT

22    IN.  AND SHE WAS NO LONGER WITH ONEWEST BANK.  I THINK

23    THAT IS IN HIS DECLARATION.  SO I THINK WITH THE

24    SUPERVISORS --

25         THE COURT:  I'M SORRY.  I'M TRYING TO FIND THE BOYLE

1    DECLARATION.

2         MR. RICHARD:  IT'S DATED THE 20TH OF OCTOBER.  IT'S

3    THE FIRST BOYLE DECLARATION.

4         THE COURT:  OKAY.

5         MR. RICHARD:  PARAGRAPH 10, YOUR HONOR.

6         THE COURT:  OKAY.  YOU CAN PROCEED TO ANSWER THE

7    REST OF THE QUESTIONS.

8         MR. RICHARD:  SO I THINK THERE IS A CARELESS DELAY.

9    AND JUST TREATING, DOING ANYTHING WITH THE SUMMONS AND

10   COMPLAINT ONCE THEY REALIZED THEY NEEDED TO MOVE, THEY,

11   BY MISTAKE WITH CARELESSNESS, PUT IT IN THE LPS SYSTEM.

12   AND BY THEN IT TOOK TOO LONG, AND YOU HAVE THE DEFAULT

13   ENTERED.  I THINK WE HAVE MADE OUR SHOWING THROUGH THE

14   BRIEFING THAT WE HAVE DONE SO FAR IN THIS CASE.

15        THE COURT:  LET ME ASK YOU SOMETHING ELSE.  I HAVE

16   SOME OTHER QUESTIONS ABOUT, WELL, ACTUALLY, ABOUT THE

17   ACCOUNTING OF THE PAYMENTS THAT HAVE BEEN MADE BY THE

18   DEBTOR SINCE, LET'S JUST TAKE IT BACK, I THINK I --

19        MR. RICHARD:  MAY 1ST.

20        THE COURT:  I THINK WE PROBABLY NEED TO TAKE IT

21   BACK, BASED ON WHAT --

22             I THINK WE SHOULD TAKE IT BACK TO JANUARY 1ST.

23   IS THAT SOMETHING YOU CAN PROVIDE?

24        MR. RICHARD:  YES.  WE CAN PROVIDE A DECLARATION

25   SETTING FORTH WHAT WE DISCUSSED EARLIER ABOUT THE TRIAL

1    PERIOD PLAN PAYMENT, WHICH PAYMENTS WERE MADE, WHICH

2    PAYMENTS WERE MISSED, AND WHY IT WAS NOT FULFILLED AND

3    THE FINAL MODIFICATION WAS NOT ENTERED INTO.

4         THE COURT:  SO I JUST WOULD LIKE A STATEMENT OF WHAT

5    PAYMENTS HAVE BEEN MADE DURING THE YEAR OF 2010,

6    WHATEVER THEY ARE.

7         MR. RICHARD:  FROM ME OR FROM --

8         THE COURT:  FROM BOTH OF YOU.  IN CASE HE DISPUTES

9    IT, I'D LIKE ONE FROM YOU.

10        MR. RICHARD:  I MEAN, I HAVE, I CAN SUBMIT A

11   DECLARATION LIKE HE OFFERED TO DO.  I CAN TELL YOU RIGHT

12   NOW THAT THERE WAS --

13        THE COURT:  THERE'S ONLY THREE PAYMENTS THIS YEAR?

14        MR. RICHARD:  SO FAR.  THERE WAS A TRIAL

15   MODIFICATION THAT BEGAN IN FEBRUARY.  IT CALLED FOR

16   THREE CONSECUTIVE PAYMENTS.  THEY MADE TWO.  THE THIRD

17   ONE WAS MADE, BUT IT WAS MADE TWO-AND-A-HALF MONTHS

18   LATE, WHICH CAUSED THEM TO FALL OUT OF THE TRIAL

19   MODIFICATION.  THAT PAYMENT WAS RECEIVED BY ONEWEST AND

20   IS BEING HELD IN A SUSPENSE ACCOUNT.

21        THE COURT:  OKAY.  HOW ABOUT THE DIFFERENT PROOFS OF

22   CLAIM.

23        MR. RICHARD:  YOU HAVE ONEWEST, AS SERVICER, HOLDS

24   LEGAL INTEREST IN THE NOTE AND THE DEED OF TRUST.  AND

25   YOU HAVE DEUTSCHE BANK NATIONAL TRUST COMPANY AS THE

1   INVESTOR.  THEY HOLD THE BENEFICIAL INTEREST IN THE NOTE

2   AND THE DEED OF TRUST.  EITHER ARE ENTITLED TO FILE A

3   PROOF OF CLAIM.  IT'S GOOD PRACTICE TO BE CONSISTENT,

4   BUT IN THIS CASE, IF YOU DO LOOK AT THE PRIOR BANKRUPTCY

5   FILED BY THE WIFE, BOTH THE PROOF OF CLAIM AND THE

6   MOTION FOR RELIEF WERE FILED IN THE NAME OF DEUTSCHE

7   BANK NATIONAL TRUST COMPANY.

8       THE COURT:  BUT THEN IN THE *CESAR DOBLE* CASE,

9   ONEWEST FILED A PROOF OF CLAIM, AND THERE WAS NO

10  REFERENCE TO ANY INTEREST IN DEUTSCHE BANK.

11          YOU KNOW, AGAIN, I DON'T REALLY UNDERSTAND WHAT

12  WAS THE ROLE OF ONEWEST?  WHAT WAS IT?  BASED ON THE

13  PLEADINGS FOR THE COURT, YOU COULD CONCLUDE THAT IT WAS,

14  AT TIMES, THE SERVICER; SOMETIMES THE OWNER; SOMETIMES

15  JUST THE ATTORNEY-IN-FACT.  AND THERE ARE DIFFERENT

16  RIGHTS AND RESPONSIBILITIES THAT COME WITH EACH OF THOSE

17  ROLES.  I DON'T KNOW, FOR EXAMPLE, WHETHER IT'S

18  PREDECESSOR, INDYMAC, LOOKS TO BE THE ORIGINAL SERVICER

19  UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF

20  2005, BUT THEN IT LOOKS LIKE THINGS CHANGED.  AND YOU

21  HAVE REAL PARTIES-IN-INTEREST ISSUES THAT HAVE BEEN

22  KNOWN IN THIS COURT TO CONFOUND THE DEBTORS TO THEIR

23  DETRIMENT.  FOR EXAMPLE, WHERE THIS HAPPENED IN MY COURT

24  YESTERDAY, THE SERVICER AND THE BENEFICIAL OWNER, THE

25  TRUSTEE OF THE SECURITIZED TRUST, WERE EACH TAKING

1  DIFFERENT POSITIONS IN THIS CASE, AND THEY LOST

2  PAYMENTS.  SO IT'S IMPORTANT TO THE DEBTORS AND TO THE

3  FUNCTIONING OF THE COURT PROCESS THAT WE KNOW WHAT IS

4  ONEWEST'S ROLE, AND WHEN DID IT GET THAT ROLE, AND WHAT

5  IS ITS RIGHTS IN THAT ROLE BECAUSE YOU DO HAVE,

6  REPEATEDLY, BOTH THE SERVICER AND THE TRUSTEE OF THE

7  SECURITIZED TRUST EITHER TAKING DIFFERENT POSITIONS.

8  I'VE HAD AT LEAST THREE CASES WHERE THE SERVICER

9  RECEIVED THE PAYMENT; SOMEHOW THEY DIDN'T GO TO THE

10  SECURITIZED TRUST; SO THE TRUSTEE BRINGS A MOTION FOR

11  RELIEF FROM STAY WHEN THE DEBTOR'S MADE ALL THE

12  PAYMENTS.  OBVIOUSLY, THAT'S THE KIND OF A PROBLEM THAT

13  SHOULD NEVER BE ALLOWED TO OCCUR.  SO IN ANY EVENT, THE

14  PROOF OF CLAIM FILED BY ONEWEST IN THIS CASE DIDN'T HAVE

15  ANY REFERENCE TO DEUTSCHE BANK AT ALL.

16     MR. MALCOLM:  YOUR HONOR, I WOULD APPRECIATE IF I

17  COULD SPEAK TO THAT BECAUSE THAT'S AN ISSUE THAT'S NEAR

18  AND DEAR TO MY HEART.  IT'S SOMETHING THAT I'VE BEEN

19  WORKING ON FOR SOME TIME AND HAVE BEEN VERY ACTIVELY

20  INVOLVED IN THAT ISSUE.  WE WERE THE FIRM THAT HANDLED

21  THE *WAYNE* CASE IN FRONT OF JUDGE BUFFORD, AS YOU KNOW

22  THAT CASE --

23     THE COURT:  I'M VERY FAMILIAR WITH IT.

24     MR. MALCOLM:  -- AND TOOK IT ON APPEAL AND

25  PREVAILED.  THAT HAPPENED TO BE A ONEWEST BANK LOAN.

1    AND PROBABLY SOMEWHAT VERY SIMILAR TO THIS.

2         AND I DEFINITELY UNDERSTAND WHERE YOU'RE COMING

3    FROM.  I UNDERSTAND THE COURT'S CONCERNS.  I UNDERSTAND

4    THAT WHEN JUDGE BUFFORD TALKED TO US ABOUT IT LAST YEAR,

5    I GUESS IT WAS.  WE DON'T HAVE THAT ISSUE HERE.  AND I'M

6    GLAD I'M HERE TO HAVE HEARD YOU SAY THAT.  I PROBABLY

7    NEED TO COME DOWN TO SAN DIEGO AND HEAR THESE ISSUES

8    MORE OFTEN BECAUSE I'VE NEVER KNOWN THERE TO BE

9    COMPETING CLAIMANTS TO THE FUNDS.  AND THAT'S EXACTLY

10   WHAT JUDGE BUFFORD WAS CONCERNED ABOUT IN THE *WAYNE*

11   CASE.  WE DON'T HAVE THAT ISSUE HERE, BUT AS I SAID, I

12   UNDERSTAND YOUR CONCERN.  I THINK IT WAS PLAZA FREEWAY

13   THAT ORIGINATED IT.

14       THE COURT:  IT'S PLAZA HOME MORTGAGE, INC. --

15       MR. MALCOLM:  PLAZA HOME MORTGAGE.

16       THE COURT:  -- THAT ORIGINATED THE NOTE IN THIS

17   CASE.  I DON'T KNOW WHEN, FOR EXAMPLE, IT LOOKS LIKE IT

18   WASN'T ORIGINALLY TRANSFERRED IN THE 2005 POOLING AND

19   SERVICING, BUT I DON'T KNOW THAT EITHER.

20         AND TO GO BACK TO THE *WAYNE* CASE, INDYMAC IN

21   THAT CASE WAS, IN FACT, THE HOLDER, BUT YOU CAN'T

22   CONCLUDE THAT INDYMAC, OR YOU CAN'T CONCLUDE HERE THAT

23   ONEWEST, IS THE HOLDER UNLESS YOU HAVE THE POOLING AND

24   SERVICING AGREEMENTS.  YOU HAVE THE EVIDENCE BEFORE YOU.

25   THAT LET'S YOU LOOK AND SEE AND CONCLUDE THAT THEY'RE

1    THE HOLDER.  THAT'S AN IMPORTANT ROLE OF THE COURT WHERE

2    WE ARE BARRAGED WITH MOTIONS FOR RELIEF FROM STAY.  AND

3    THEY'RE BECOMING INCREASINGLY CONTRADICTORY AS TO WHO

4    HOLDS WHAT, AND WHAT THEIR RIGHTS ARE, LEAVING THE

5    ENTIRE SYSTEM IN DISARRAY.

6        MR. MALCOLM:  WELL, IT MOST CERTAINLY CAN CAUSE

7    DISARRAY IN THE SYSTEM.

8            I DON'T THINK THAT WE HAVE THAT ISSUE HERE.  I

9    WOULD LIKE TO BRIEF IT SO YOU'LL HAVE THE EVIDENCE IN

10   FRONT OF YOU.  I'VE LOOKED AT IT MYSELF, BUT I HAVEN'T

11   HAD ENOUGH TIME IN LIGHT OF WHEN, YOU KNOW, WHEN THE

12   TENTATIVE WAS POSTED TO REALLY GET ALL THAT IN FRONT OF

13   US.  SO WE'LL GET THAT TO YOU.

14           BUT WHAT OCCURRED HERE WAS A TRANSFER, I

15   BELIEVE, TO INDYMAC BEFORE IT WENT INSOLVENT, AND THE

16   FDIC TOOK IT OVER, AS YOU KNOW, AND SOLD THE ASSETS TO

17   ONEWEST BANK.  AND IN THAT PROCESS, THERE WAS AN

18   ASSIGNMENT.  I SHOULDN'T SAY IN THAT PROCESS BECAUSE I'M

19   NOT POSITIVE ABOUT THE TIMING, BUT THERE WAS AN

20   ASSIGNMENT OF THE BENEFICIAL INTEREST IN THE DEED OF

21   TRUST.  AND HOW WE USE THESE WORDS IS REALLY IMPORTANT.

22   YOU KNOW, THERE IS NO BENEFICIARY IN THE NOTE,

23   OBVIOUSLY.  YOU HAVE THE HOLDER OF THE NOTE.  AND

24   ONEWEST BANK IS CURRENTLY THE HOLDER OF THE NOTE.  IT

25   HAS ORIGINAL POSSESSION OF IT.  AND UNDER 3205, AS THE

1 DISTRICT COURT IN *WAYNE* NOTED, THE HOLDER OF THAT NOTE

2 HAS THE ABILITY, HAS STANDING IN OTHER WORDS, IS THE

3 REAL PARTY IN INTEREST UNDER RULE 17 THAT JUDGE BUFFORD

4 HAD AN ISSUE WITH.  BUT --

5   THE COURT:  JUST TO --

6    THE ISSUE AS TO WHO HAS RIGHTS TO THE NOTE, I

7 AM OF THE VIEW, LOOKING AT JUDGE RIGOT'S DECISION, THAT

8 IT IS NOT MERS.  BECAUSE IF YOU LOOK AT WHAT MERS DOES,

9 THEN YOU LOOK AT THE RIGHTS IT PRESERVES.  IT HAS NO

10 RIGHT TO MAKE PAYMENTS OR TO MAKE DECISIONS, REALLY, IN

11 FORECLOSURE.  THAT'S LEFT TO EITHER THE OWNER OR THE

12 SERVICER BASED ON WHAT THE SERVICING AGREEMENT SAYS AND

13 WHAT THEIR DEAL IS.  AGENTS MAY HAVE STANDING.  AND

14 THAT'S, IN FACT, WHAT APPARENTLY HAPPENED IN *WANG* THAT

15 THEY WERE THE HOLDER, AND THEREFORE HAD STANDING TO, IN

16 FACT, ENFORCE THE NOTE, WHICH WOULD INCLUDE THE RIGHT TO

17 FORECLOSE.

18    THE PROBLEM HERE IS THAT I AM FACED WITH

19 CONTRADICTORY INFORMATION THAT GOES BACK FOR TWO YEARS

20 ABOUT EXACTLY WHAT ONEWEST'S ROLE IS, WHAT IT OWNS, WHEN

21 IT OWNED IT, AND WHO'S REALLY GOT AUTHORITY TO ACT HERE.

22   MR. MALCOLM:  IN THAT PRIOR CASE; RIGHT?  IS THAT

23 WHAT YOU'RE REFERRING TO?

24   THE COURT:  NO.  I'M TALKING RIGHT HERE.  I CAN TELL

25 YOU THAT IF YOU READ IN THE PROOF OF CLAIM FILED BY

1    ONEWEST IN THIS CASE, YOU WOULD THINK IT IS THE OWNER

2    BECAUSE IT DOESN'T SAY ANYTHING LIKE ACTING AS SERVICER

3    ON BEHALF OF DEUTSCHE BANK.  IF YOU READ IN THE *MARTHA*

4    *DOBLE* CASE, AND AS YOU KNOW, THOSE ARE FILED UNDER

5    PENALTY OF PERJURY, IT WAS FILED BY DEUTSCHE BANK, WHICH

6    SAYS ANOTHER THING.  WHERE YOU ARE DEALING WITH THE

7    SITUATION OF PEOPLE BOTH CLAIMING THE RIGHT TO PAYMENT,

8    AND YET THE PAYMENTS ARE GOING SOMEWHERE, THAT IS A

9    PARTICULARLY IMPORTANT ISSUE THAT THE DEBTOR SHOULDN'T

10   HAVE TO CONCERN THEMSELVES WITH UNDER THE VERY TERMS OF

11   THEIR DOCUMENTATION.

12           THERE ARE MOTIONS FOR RELIEF FROM STAY, WHICH

13   TAKE, IN THIS CASE, FILED ON BEHALF OF ONEWEST AND

14   DEUTSCHE BANK THAT TAKE MORE INCONSISTENT POSITIONS

15   REGARDING WHAT IS THE ROLE OF ONEWEST IN THIS CASE,

16   VIS-À-VIS DEUTSCHE BANK.

17           AND I'M NOT SURE THAT THE RECORD IS CAPABLE,

18   REALLY, OF BEING RESOLVED.  I DON'T EVEN KNOW WHEN

19   DEUTSCHE BANK GOT THE NOTE.  THESE WERE THE DATES

20   PROVIDED TO THE COURT.  THERE ARE FOUR OF THEM, AS YOU

21   PROBABLY SAW FROM MY TENTATIVE, NOT ONE, NOT TWO, BUT

22   FOUR.  YOU KNOW, WHY DO WE HAVE SO MANY ASSIGNMENTS?

23   WE'VE GOT THE INITIAL POOLING AND SERVICING.  I SEE

24   THERE'S A TYPO IN MY TENTATIVE.  IT SHOULD HAVE BEEN THE

25   JUNE 1ST, 2005, POOLING PSA.  THEN THERE'S A STATEMENT

BY SOMEONE ELSE ON DECEMBER 3RD, 2008.  THEN WE HAVE TWO
DIFFERENT ASSIGNMENTS:  ONE DATED NOVEMBER 14TH, 2009,
AND ONE DATED MAY 19, 2010.  SO IT IS, DESPITE AN
EXTENSIVE RECORD, IT IS ENTIRELY UNCLEAR TO THIS COURT
WHO OWNS WHAT AND FROM WHAT SOURCE AND WHAT THEIR RIGHTS
ARE.

MR. MALCOLM:  I UNDERSTAND THE CONCERN, YOUR HONOR.
I DEAL WITH THIS EVERY DAY MYSELF, PROBABLY NOT ON THE
SCALE YOU DO, BUT I DO.  AND I'VE BEEN DOING THIS AN
AWFUL LONG TIME.  THINGS HAVE PROGRESSED.  I DON'T KNOW
IF WE SHOULD CALL IT PROGRESSION.  THINGS ARE A LOT
DIFFERENT THAN THEY USED TO BE.  SO IT'S VERY CONFUSING.

AND I FIND THAT ONE OF THE BIGGEST ISSUES IS
THE FAILURE TO PROPERLY ARTICULATE THE CAPACITY.  AND
WHILE THERE MAY BE -- THERE ARE -- ITEMS IN THE RECORD
THAT ARE INCONSISTENT, BASED ON THE FACE OF IT, IT'S
EXPLAINABLE.  AND WE CAN EXPLAIN IT.  I'M SURE YOU HAVE
THIS ALL THE TIME.

THE COURT:  ACTUALLY, AND NOT ONLY THAT, BUT I WAS
INVOLVED IN DRAFTING POOLING AND SERVICING AGREEMENTS.
SO I DO UNDERSTAND THE TECHNOLOGY.  I UNDERSTAND THE
SYSTEM.  I'VE GIVEN PROGRAMS ON IT.  I UNDERSTAND THE
SYSTEM.

AND I DON'T HAVE THE PSA.  I DON'T HAVE ANY OF
THIS.  ALL I HAVE ARE PERHAPS A DOZEN CONTRADICTORY

1   STATEMENTS ABOUT WHO HOLDS THIS NOTE AND WHEN THEY GOT

2   IT AND WHEN DEUTSCHE BANK CAME ON BOARD.  AND I'VE DONE

3   A VERY THOROUGH REVIEW OF THIS RECORD, NOT JUST THE

4   *CESAR DOBLE* CASE BUT ALSO THE *MARTHA DOBLE* CASE TO SEE

5   TO TRY TO ASCERTAIN THIS SO THAT THIS CASE COULD MOVE

6   ON.

7           SO IN ANY EVENT, AS TO WHO OWNS THE LOAN OR ANY

8   OF THOSE QUESTIONS, I DON'T KNOW IF YOU HAVE ANYTHING

9   FURTHER TO ADD.

10      MR. MALCOLM:  WELL, YES, I WOULD.  I DO APPRECIATE

11  YOUR POSITION.  AGAIN, I'VE BEEN IN YOUR POSITION AS

12  WELL, AND SO I UNDERSTAND IT.

13          I WOULD LIKE US TO HAVE THE OPPORTUNITY TO

14  CLARIFY THE RECORD SO THERE'S TOTAL CLARITY.  AND I'M

15  CONFIDENT THAT THERE CAN BE TOTAL CLARITY.  YOU DON'T

16  HAVE EVERYTHING IN FRONT OF YOU THAT YOU NEED.  THIS IS

17  AN UNFORTUNATE SITUATION.  AS A MATTER OF FACT, WHAT I

18  WOULD REALLY LIKE US TO DO IS HAVE AN OPPORTUNITY TO

19  RESPOND IN WRITING WITH THE APPROPRIATE EVIDENTIARY

20  SUPPORT SO YOU CAN HAVE TOTAL CONFIDENCE.

21          ONE OF THE REASONS I'M HERE TODAY IS TO HELP

22  YOU DEVELOP CONFIDENCE, AT LEAST IN THIS CASE, AND TO

23  KNOW THAT WHEN WE ARE INVOLVED IN CASES, WE UNDERSTAND

24  THE ISSUES.  AND WE'RE GOING TO TRY OUR BEST TO MAKE YOU

25  CONFIDENT BECAUSE WE GET IT.

1       I'M PREPARED TO SUGGEST THAT WE REIMBURSE

2    COUNSEL FOR HIS ATTORNEY'S FEES THAT HE'S INCURRED IN

3    CONNECTION WITH THE REQUEST FOR ENTRY OF DEFAULT.

4       I THINK THERE WAS A FAIR AMOUNT OF EFFORT MADE

5    TO TRY TO GET THINGS ON TRACK QUICKLY.  AND SO I HOPE

6    THE COURT RECOGNIZES THAT.  AND WE CERTAINLY HAVE TRIED

7    TO HELP THE PROCESS.  AND WE WOULD LIKE TO FILE ANOTHER

8    PLEADING, CONTINUE THIS, AND SATISFY THE CONCERNS

9    ARTICULATED IN YOUR TENTATIVE.

10    THE COURT:  WELL, I APPRECIATE THAT.  THIS IS WHAT

11   I'M GOING TO DO.  CANDIDLY, THIS CASE CRIES OUT FOR A

12   SETTLEMENT OF SOME KIND.  THERE IS AN ENDORSEMENT.  IT

13   WASN'T PROVIDED TO THE COURT UNTIL THE FIFTH TRY, WHICH

14   MAY COME WITH ITS CONSEQUENCES, BUT THERE IS AN

15   ENDORSEMENT.  THE IMPACT ON THAT IS THE COURT IS GOING

16   TO TAKE IT UNDER SUBMISSION.

17       SECOND, THERE WAS AN EFFORT IN A LOAN

18   MODIFICATION.  PERHAPS THIS IS A SITUATION WHERE ONE CAN

19   BE DONE.  WHEN WE ARE NOT ARGUING OVER THE ABYSMAL

20   RECORD IN THIS CASE, WHICH BY THE WAY, IS NOT TOTALLY

21   ONE SIDED, BUT THAT IS WHAT IS IN FRONT OF THE COURT.

22       THERE HAVE BEEN UNNECESSARY ATTORNEYS' FEES

23   THAT HAVE BEEN --

24       AND I DON'T KNOW THE PAYMENT HISTORY.  I DON'T

25   KNOW, I MEAN, ULTIMATELY, WHETHER YOU'RE IN LOAN MOD OR

1   NOT, YOU HAVE TO MAKE YOUR PAYMENTS.

2          BUT THESE DEBTORS MAY HAVE FALLEN VICTIM TO A

3   LOT OF CONFUSION IN THE SERVICING BUSINESS, WHICH IS

4   RECOGNIZED IN MULTIPLE CASES, MOST RECENTLY, THE *NOVAK*

5   CASE OUT OF THE FIRST CIRCUIT.

6          SO WHAT THE COURT IS GOING TO DO IS THE COURT

7   IS GOING TO NOT --

8          THE FURTHER BRIEFING THAT THE COURT WILL

9   ENTERTAIN IS SIMPLY ON THE DECLARATION REGARDING THE

10  PAYMENTS THAT WERE MADE DURING THE YEAR 2010.  THE COURT

11  WILL ALSO GIVE THE PARTIES A CHANCE TO TRY TO RESOLVE

12  THIS.  AND THE COURT WILL CONTINUE THIS MATTER UNTIL

13  JANUARY -- LET'S SEE -- ARE WE GOING TO HAVE TO PUT IT

14  ON THE 27TH?

15     MR. ROBINSON:  WE COULD, YOUR HONOR.  3 O'CLOCK LATE

16  IN THE AFTERNOON?

17     THE COURT:  YES.  WE WILL PUT IT ON JANUARY 27TH AT

18  3 O'CLOCK.  THE COURT WILL REQUIRE THAT DECLARATIONS

19  REGARDING THE PAYMENTS THAT WERE MADE AND THE DETAILS

20  REGARDING THE ENTIRE LOAN MODIFICATION PROCESS ARE TO BE

21  FILED JANUARY 14TH.  THE COURT WILL THEN ADVISE THE

22  PARTIES ON THE 21ST WHETHER IT WILL RECEIVE FURTHER

23  BRIEFING ON ANY OTHER ISSUE AT THAT POINT IN TIME.

24          SO ARE THERE ANY OTHER QUESTIONS ABOUT THAT

25  RULING?

1          MR. MALCOLM:  YOUR HONOR, I DON'T HAVE A QUESTION.

2              WELL, I DO.  I'M NOT SURE THAT WILL GIVE US

3     ADEQUATE TIME.  WE CAN HEAR FROM DEBTOR'S COUNSEL.  I

4     DID APPROACH DEBTOR'S COUNSEL BEFORE THE HEARING ABOUT

5     EXACTLY THAT POINT.  IT SEEMS TO ME THAT THE LOAN MOD

6     ISSUE SHOULD BE THOROUGHLY EXPLORED THROUGH OUR OFFICE

7     TO MAKE SURE NOTHING FALLS THROUGH THE CRACKS.  I DON'T

8     KNOW THAT THE DEBTOR IS IN A POSITION TO COMMENT ON THAT

9     NOW BECAUSE OF THE FAMILY SITUATION.  SO IF THE 14TH AND

10    27TH DON'T WORK, WE MIGHT WANT TO PUSH THAT BACK A

11    LITTLE BIT.

12        THE COURT:  IF THE PARTIES ARE ACTIVELY INVOLVED IN

13    A LOAN MODIFICATION PROCESS, YOU CAN ADVISE THE COURT

14    ANYTIME IN JANUARY, AND I'LL GIVE YOU TIME TO RESOLVE

15    THAT.  THE COURTS MAY NEED TO PLAY A ROLE IN THAT.  BUT

16    OTHERWISE --

17            DID YOU HAVE A QUESTION, MR. ST. JOHN?

18        MR. ST. JOHN:  I DO, YOUR HONOR.  YOUR HONOR, THE

19    COURT IS, SO I UNDERSTAND WHAT IS BEING REQUIRED OF US,

20    YOU WANT THE ACCOUNTING FOR ALL PAYMENTS MADE.

21        THE COURT:  WHATEVER YOU'VE GOT ON THIS LOAN

22    MODIFICATION ISSUE.  AND, AGAIN, THAT'S ALL THAT I'M

23    GOING TO ACCEPT AT THIS POINT.  ONCE I'VE SEEN THAT, I

24    WILL LET YOU KNOW BY THE 21ST WHETHER I WILL RECEIVE ANY

25    FURTHER BRIEFING.

1        MR. ST. JOHN:  ALL RIGHT.

2        THE COURT:  IN THE INTERIM, I HAVE ENCOURAGED FOR

3   THE REASONS I HAVE STATED ON THE RECORD, THAT THE

4   PARTIES TRY TO RESOLVE THIS MATTER.  IT WOULD BE IN ALL

5   THEIR BEST INTERESTS.

6        MR. ST. JOHN:  JUST SO -- I'M SORRY TO BE IGNORANT

7   HERE, YOUR HONOR -- JUST TO BE CLEAR, THAT THERE WILL BE

8   NO OTHER BRIEFING, OTHER THAN WITH REGARD TO THE LOAN

9   MOD AT THIS TIME.

10       THE COURT:  NO.  I'VE SPENT ABOUT TWO HOURS LOOKING

11  AT THE RECORD IN THIS CASE.

12       MR. ST. JOHN:  OKAY.  THANK YOU, YOUR HONOR.

13       THE COURT:  AND IF I DECIDE I NEED IT, I WILL ASK

14  FOR IT.

15            AND I APPRECIATE ALL OF YOU COMING DOWN, BUT

16  THAT WILL BE THE ORDER OF THE COURT.

17       MR. ST. JOHN:  THANK YOU, YOUR HONOR.

18       THE COURT:  THANK YOU.

19                           -O0O-

20

21

22

23

24

25

1

2 STATE OF CALIFORNIA

3 COUNTY OF SAN DIEGO

4

5 I, COLLETTA BROOKS, HEREBY CERTIFY:

6

7 THAT I REPORTED IN SHORTHAND THE PROCEEDINGS HELD IN THE

8 FOREGOING CAUSE ON THE 16TH DAY OF DECEMBER, 2010;

9 THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING

10 UNDER MY DIRECTION AND THAT THE FOREGOING 32 PAGES

11 CONTAIN A CORRECT STATEMENT OF THE PROCEEDINGS.

12

13 DATED THIS 31ST DAY OF DECEMBER, 2010.

14

15

16 /S/COLLETTA BROOKS

17 COLLETTA BROOKS
CSR NO. 12589
18

19

20

21

22

23

24

25

33