1  David A. St. John (048746)
   ST. JOHN LAW OFFICES
2  309 SOUTH A Street
   Oxnard CA 93030-5804
3  (805) 486-8000 - (805) 512-7318 fax
   dsj@law-pro.net
4
5  *Attorneys for* Cesar Doble

6

7

8                  UNITED STATES  DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11  CESAR DOBLE,                          | Case No. 10-1926-MM13

12               Debtor,                  | Adversary Case No. 10-90308-MM

13  _____

14  CESAR DOBLE,                          | DECLARATION OF CESAR DOBLE
                                          | REGARDING  PAYMENTS MADE IN
15               Plaintiff,               | 2010 AND DETAILS OF LOAN
                                          | MODIFICATION
16  vs.

17  DEUTSCHE BANK NATIONAL TRUST          | DATE:       January 27, 2011
    COMPANY, AS TRUSTEE OF THE            | TIME:       3:00pm
18  HARBORVIEW MORTGAGE LOAN              | DEPT:       1
    TRUST 2005-5, MORTGAGE LOAN PASS-
19  THROUGH CERTIFICATES,
    SERIES 2005-5 UNDER POOLING AND
20  SERVICING AGREEMENT DATED JUNE
    01, 2005, and ONEWEST BANK, FSB,
21
22               Defendants.
23  _____

24

25       CESAR DOBLE declares:

26       1.     I am the plaintiff in the above entitled proceeding. I make this declaration

27  pursuant to the Order entered December 16, 2010. I am personally familiar with the following

28  facts and if called as a witness, could and would testify thereto.

---

Declaration of Cesar Doble re 2010 Payments and Details of Loan Modification        -1-

2.    I am a recently retired Supervisory Border Patrol Agent serving almost 25 years. My wife, Martha, and I have been married for 31 years. We have 2 children: a son training as a federal agent at the Academy in Georgia, and a daughter attending college.

3.    We purchased our home in March of 2005. Even though we had substantial savings, good income and excellent credit, Plaza Home Mortgage, Inc., sold us into a Pay Option Adjustable Rate Mortgage. Their agent, who acted as our advisor, represented that we would be part of the "Plaza Home Mortgage Family" and once we had a good track record of at least six payments, they would readily refinance with an affordable conventional fixed rate loan.

4.    Soon after closing, we were notified that our mortgage was transferred to IndyMac Bank FSB. I contacted IndyMac several times about refinancing but they said they were interested only if I increased the loan and took cash out. Refinances became unavailable after the market collapsed in 2007.

5.    By 2007, our interest rate jumped from 1% for the first month to 5.5% and then up to 7.625%. Monthly negative amortization increased from $823.02 to $1,969.29 while our minimum monthly payment increased from $2,090.66 to $2,791.00, without taxes or insurance.

6.    I called IndyMac for help and was told that their criteria for my loan required that I must be in default before IndyMac could entertain any request for forbearance or modification. I was confused as to why my lender required that I be in default facing foreclosure. I felt as if one leg was being knocked out from under me.

7.    In April of 2009, we were notified that our mortgage was transferred to One West Bank FSB. I contacted One West who also advised that they could not modify our loan unless we were in default. I, therefore, withheld further payment and applied for a modification.

8.    The modification process was so frustrating that I had to believe it was intended to fail. Finally, on or about October 14, 2009, IndyMac Mortgage Services sent us a HAMP Denial Letter, Exhibit "A" hereto, with no explanation, except that "Based on the information submitted in your financial package, the present status of your loan and/or other specific criteria regarding your loan, we cannot accommodate your request for a loan modification."

9.    On November 3, 2009, my wife, Martha Doble, filed a Voluntary Bankruptcy

Declaration of Cesar Doble re 2010 Payments and Details of Loan Modification          -2-

1  Petition No.: 09-16970-LA13 as a last straw to save our home.

2      10.    On November 30, 2009, IndyMac Mortgage Services sent us a letter, Exhibit "B"

3  hereto, advising us that our home was sold in foreclosure. I told my family that we had to move

4  and find space with relatives while we looked for an apartment. This was a dead end for me.

5      11.    Then, seemingly out of the blue, IndyMac Mortgage Services sent us a trial loan

6  modification agreement dated December 24, 2009, Exhibit "C" hereto, which provided for three

7  monthly trial payments of $3,592.74, each, starting February 1, 2010.

8      12.    At the same time, on or about January 14, 2010, we received a sworn Proof of

9  Claim in my wife's bankruptcy case 09-16970-LA13 that, on November 24, 2009, our mortgage

10  had been transferred to Deutsche Bank National Trust Company, as Trustee of the HarborView

11  Mortgage Loan Trust. We did not know who or what was controlling our mortgage.

12      13.    On January 26, 2010, I returned the signed trial modification agreement and four

13  Personal Money Orders payable to One West Bank totaling $3,592.74, Exhibit "D" hereto, for

14  the February payment.

15      14.    On February 23, 2010, I forwarded a Wells Fargo Official Check payable to One

16  West Bank for $3,592.74 , Exhibit "E" hereto, for the March payment

17      15.    During April of 2010, I received a notice from IndyMac Mortgage Services that

18  my payment was going up to $5,825.00. I contacted IndyMac Mortgage Services and was told I

19  had to pay the $5,825.00 and the "investor" also required a lump sum payment of over

20  $26,000.00 without explanation, or foreclosure would proceed without exception.

21      16.    On May 27, 2010, at 6:00 pm, I found a packet on the ground outside my front

22  door from IndyMac Loan Services containing a permanent loan modification agreement and

23  letter dated May 6, 2010, Exhibit "F" hereto, stating "Congratulations! You are eligible for a

24  Home Affordable Modification." The letter required that the signed agreement and a payment of

25  $3,712.95 be received in Austin, Texas, "no later than May 28, 2010," which was impossible. I

26  called them back to request a few days extension.

27      17.    On June 2, 2010, I returned the signed permanent modification agreement and a

28  Wells Fargo Official Check, Exhibit "G" hereto, payable to INDYMAC for $3,712.95.

---

Declaration of Cesar Doble re 2010 Payments and Details of Loan Modification        -3-

18.    On or about June 14, 2010, I received a notice from IndyMac Mortgage Services, Exhibit "H" hereto, that my payment was going up to $6,422.07.

19.    We called IndyMac Mortgage Services and were advised the required payment was indeed $6,422.07; that a foreclosure sale was scheduled and would proceed without delay.

20.    I filed for bankruptcy on June 28, 2010, and the above Adversary Proceeding on June 29, 2010, which was served by certified mail the same day. All correspondence from defendants after that date was addressed to my attorney. I have no record or recollection of any letter addressed to me from One West Bank or from IndyMac Mortgage Services after June 28, 2010 concerning a missing trial modification payment.

21.    Our loan started with us in the "Plaza Home Mortgage Family" by which I believed we would be dealing with a lender, or possibly a successor, with its own interests at stake, where a "Win-Win" resolution could be possible if there were trouble with the loan, especially through circumstances beyond our control. It was never disclosed that Plaza Home Mortgage, Inc., or its successors, would invoke a New York securitization trust as the party controlling our mortgage which does not have the same incentives to settle not having its own economic interests at stake, except as a trust or a servicer, and having multiple layers of restrictions against dealing with me. One West Bank FSB has claimed various roles as servicer, attorney in fact, or holder of our mortgage and it is no wonder I could not get a straight answer or a reasonable result. I do not know how much longer and how much more pain defendants expect us to absorb.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 13, 2011, at Chula Vista, California.

CESAR DOBLE

## United States Bankruptcy Court
### Southern District of California

In re    <u>Cesar M. Doble</u>

Debtor(s)

Case No.   <u>10-bk-11296-13</u>

Chapter   <u>13</u>

## PROOF OF SERVICE BY MAIL

I, Nenen Obrador, declare that I am a resident of or employed in the County of Ventura, State of California. My address is 309 South A Street, Oxnard CA 93030. I am over the age of eighteen years of age and am not a party to this case.

On January 13, 2011, I served **DECLARATION OF CESAR DOBLE REGARDING PAYMENTS MADE IN 2010 AND DETAILS OF LOAN MODIFICATION** on the parties listed below, by placing true and correct copies thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Oxnard CA addressed as follows:

   See Attached Service List

I am familiar with this firm's practice of collection and processing document(s) for mailing with the United States Postal Service and that said document(s) shall be deposited with the United States Postal Service on the same day in the ordinary course of business pursuant to <u>Code Civ. Proc. 1013a</u>. I am aware that on a motion of a party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on January 13, 2011.

**Signature  Nenen Obrador**

SERVICE LIST

William G Malcolm
Malcolm Cisneros
2112 Business Center Dr Flr 2
Irvine CA 92612

Courtesy Copies for
Honorable Margaret M. Mann, Judge
Attn: Intake
US Bankruptcy Court
Southern District of California
325 West F. Street
San Diego, CA 92101-6998

Cesar M. Doble
1466 Heatherwood Avenue
Chula Vista, CA 91913-2974

David L. Skelton-**Trustee (SD)**
525 B. Street, Suite 1430
San Diego, CA 92101-4507

# EXHIBIT A



# Thank you for your recent request.

Please keep your financial information updated.

TB41013B   7000000644 01.0005.0127 644/1

Cesar M Doble and Martha E Doble
1466 Heatherwood Ave
Chula Vista, CA 91913-2974

www.owb.com

# 1.888.280.6194

Loan Number: 3001242449

October 14, 2009

Dear Cesar M Doble and Martha E Doble,

Thank you for your recent request to modify the terms of your mortgage serviced by IndyMac Mortgage Services, a division of OneWest Bank, FSB℠.

Based on the information submitted in your financial package, the present status of your loan and/or other specific criteria regarding your loan, we cannot accommodate your request for a loan modification.

Please note that your case may be re-evaluated at a future date. To enable us to re-evaluate your case, please keep us apprised of any material changes in your financial situation or monthly living expenses.

IndyMac Mortgage Services will continue to service your loan in accordance with the terms of your existing Note. Late mortgage payments will be reported to the credit bureaus, and failure to make payments as currently required will impact your credit rating and may ultimately result in foreclosure action.

We may have options, other than a modification, available to assist with your current situation. Our loan counselors are here to help and can be reached at 1.888.280.6194.

Sincerely,

Brandon Latman
First Vice President
IndyMac Mortgage Services

We are here to help.
1.888.280.6194
We may have options that could assist with your situation.

IndyMac Mortgage Services, a division of OneWest Bank, FSB


Member FDIC

© 2009 IndyMac Mortgage Services, a division of OneWest Bank, FSB. Registered trade/service marks are the property of OneWest Bank, FSB and/or its subsidiaries.

# EXHIBIT B

**IndyMac Mortgage Services**
a division of OneWest Bank, FSB℠

IB41127A    7000001281 01.0006.0108 1281/1

Cesar M Doble and Martha E Doble
1466 Heatherwood Ave
Chula Vista, CA 91913-2974

Loan Number: 3001242449

November 30, 2009

Dear Cesar M Doble and Martha E Doble,

Thank you for your recent request to modify the terms of your mortgage serviced by IndyMac Mortgage Services, a division of OneWest Bank, FSB.

On March 4, 2009 the Department of the Treasury launched the Home Affordable Modification Program (HAMP). The program was adopted by IndyMac Mortgage Services on August 11, 2009. By signing up for HAMP, IndyMac Mortgage Services has agreed to follow the rules and guidelines that have been established by the United States Department of the Treasury. While the program is designed to help borrowers who are experiencing a financial hardship, not all borrowers will meet the eligibility qualifications established by the Department of the Treasury, and therefore, not all borrowers are eligible for a HAMP loan modification.

In reviewing your loan for a possible modification, we have determined that your loan does not qualify for HAMP because the foreclosure sale process has already been completed.

Please contact us at 1.888.280.6194 if you have any questions.

Sincerely,

Brandon Latman
First Vice President
IndyMac Mortgage Services

www.owb.com

# EXHIBIT C



# MAKING HOME AFFORDABLE



---

## NOTICE TO BORROWERS

Be advised that you are signing the following documents under penalty of perjury. Any misstatement of material fact made in the completion of these documents including but not limited to misstatement regarding your occupancy in your home, hardship circumstances, and/or income will subject you to potential criminal investigation and prosecution for the following crimes: perjury, false statements, mail fraud, and wire fraud. The information contained in these documents is subject to examination and verification. Any potential misrepresentation will be referred to the appropriate law enforcement authority for investigation and prosecution.

By signing the enclosed documents you certify, represent and agree that:

"Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the program, are true and correct."

---

## SIGTARP Hotline

If you are aware of fraud, waste, abuse, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program, please contact the SIGTARP Hotline by:

| | |
|---|---|
| Online Form: | www.SIGTARP.gov |
| Phone: | 877-SIG-2009 (toll-free) |
| Fax: | 202-622-4559 |
| Mail to: | Hotline |
| | Office of the Special Inspector General |
| | For The Troubled Asset Relief Program |
| | 1500 Pennsylvania Ave., NW, Suite 1064 |
| | Washington, D.C. 20220 |

For all other inquiries related to your mortgage, please contact your Lender.

**HELPING YOU STAY IN YOUR HOME.**



MAKING HOME AFFORDABLE

---

## IndyMac Mortgage Services
a division of OneWest Bank, FSB℠

*You may be able to make your payments more affordable.*
*Act now to get the help you need!*

December 24, 2009
IBJ1223A  2000002161 167/4

Cesar M Doble and Martha E Doble
1466 Heatherwood Ave
Chula Vista, CA 91913-2974

| | |
|---|---|
| **Loan #:** | **3001242449** |
| **Reference #:** | **3001242449K4093** |
| **Property Address:** | **1466 Heatherwood Ave** |
| | **Chula Vista, CA 91913** |

Dear Cesar M Doble and Martha E Doble,

**You may qualify for a Home Affordable Modification Trial Period Plan – a way to make your payment more affordable.**

We have enclosed a customized Home Affordable Modification Trial Period Plan ("*Trial Period Plan*"). If you qualify under the federal government's Home Affordable Modification Program and comply with the terms of the Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure.

**STEP 1   PROVIDE THE INFO WE NEED TO HELP YOU**

Detailed instructions on what you need to do to take advantage of this offer are set forth on the enclosed document entitled "Complete Your Checklist." Generally, you will need to:

- *Explain the financial hardship that makes it difficult for you to pay your mortgage loan using the Hardship Affidavit (enclosed).*
- *Submit the required documentation of your income.*
- *Make timely monthly trial period payments.*

The monthly trial period payments are based on the income information that you previously provided to us. They are also our estimate of what your payment will be IF we are able to modify your loan under the terms of the program. If your income documentation does not support the income amount that you previously provided in our discussions, two scenarios can occur:

1) Your monthly payment under the Trial Period Plan may change
2) You may not qualify for this loan modification program

If you do not qualify for a loan modification, we will work with you to explore other options available to help you keep your home or ease your transition to a new home.

**STEP 2   LET US KNOW THAT YOU ACCEPT THIS OFFER**

Please let us know no later than 1/23/2010 that you accept the Trial Period Plan. Now is the time to act. We are ready to help you. Please take the steps outlined on the enclosed document "Complete Your Checklist." If you have any questions, please contact us at 1.800.781.7399.

Sincerely,

Brandon Latman
First Vice President
IndyMac Mortgage Services, a division of OneWest Bank, FSB℠

The *Making Home Affordable* program was created to help millions of homeowners refinance or modify their mortgages. As part of this program, we – your mortgage servicer – and the Federal Government are working to offer you options to help you stay in your home.

Attachments:  *Complete Your Checklist, Important Program Info, Frequently Asked Questions, Two copies of the Trial Period Plan, Hardship Affidavit, and IRS Form 4506-T*

C1SL-309-02-8

# Act Now!

**To accept this offer,** and see if you qualify for a Home Affordable Modification, send the 7 items listed below to IndyMac Mortgage Services, Mailcode: IndyMac-1, 2900 Esperanza Crossing, Austin, TX 78758, no later than 1/23/2010. Use the return envelope provided for your convenience.

☐ 1. Two copies of the enclosed Trial Period Plan signed by all borrowers,

☐ 2. Your first month's trial period payment in the amount of $3,592.74,

☐ 3. The enclosed Hardship Affidavit completed and signed by all borrowers (no notary required),

☐ 4. A signed and dated copy of the IRS Form 4506-T (Request for Transcript of Tax Return) for each borrower (borrowers who filed their tax returns jointly may send in one IRS Form 4506-T signed and dated by both of the joint filers),

☐ 5. Copy of the most recent utility bill for the subject property,

☐ 6. Copy of the most recent Homeowners Association (HOA) monthly statement for the subject property, if applicable, and

☐ 7. Documentation to verify all of the income of each borrower (including any alimony or child support that you choose to rely upon to qualify). This documentation should include:

**For each borrower who is a salaried employee:**
☐ Copy of the most recent filed federal tax return with all schedules; and
☐ Copy of the two most recent pay stubs.

**For each borrower who is self-employed:**
☐ Copy of the most recent filed federal tax return with all schedules, and
☐ Copy of the most recent quarterly or year-to-date profit/loss statement.

**For each borrower who has income such as social security, disability or death benefits, pension, public assistance, or unemployment:**
☐ Copy of most recent federal tax return with all schedules and W-2 or copies of two most recent bank statements.
☐ Copy of benefits statement or letter from the provider that states the amount, frequency and duration of the benefit. Social security, disability, death or pension benefits must continue for at least 3 years to be considered qualifying income under this program. Public assistance or unemployment benefits must continue for at least 9 months to be considered qualifying income under this program.

**For each borrower who is relying on alimony or child support as qualifying income:**
☐ Copy of divorce decree, separation agreement or other written agreement or decree that states the amount of the alimony or child support and period of time over which it will be received. Payments must continue for at least 3 years to be considered qualifying income under this program.
☐ Proof of full, regular and timely payments; for example deposit slips, bank statements, court verification or filed federal tax return with all schedules.

**For each borrower who has rental income:**
☐ Copies of most recent two years filed federal tax returns with all schedules, including Schedule E—Supplement Income and Loss. Rental income for qualifying purposes will be 75% of the gross rent.

If you have other types of income, cannot locate required documents, or have questions about the documentation required, please contact us at 1.800.781.7399.

**You must send in both signed copies of the Trial Period Plan, all required income documentation, and your first trial payment by this date 1/23/2010. If you cannot provide the documentation within the time frame provided, please contact us to request an extension of time to gather your documents.**

Keep a copy of all documents for your records. Don't send original income documentation as copies are acceptable.

**Your remaining trial period payments in the amount of $3,592.74 per month will be due on or before 3/1/2010 and 4/1/2010. These payments should be sent instead of, not in addition to, your normal monthly mortgage payment.** If the trial period payments are made in amounts different from the amount stated, your loan may not be modified.

If you cannot afford the trial period payments shown above, but want to remain in your home, or if you want to leave your home and avoid foreclosure, please call us at 1.800.781.7399. We may be able to help you.

**IMPORTANT PROGRAM INFO** Here's what you need to know about the Home Affordable Modification program

**NO FEES.** There are no fees under the Home Affordable Modification program.

**TRIAL PERIOD PLAN/MODIFICATION AGREEMENT.** The Trial Period Plan is the first step. Once we are able to confirm your income and eligibility for the program, we will finalize your modified loan terms and send you a loan modification agreement ("Modification Agreement"), which will reflect the terms of your modified loan. In addition to successfully completing the trial period, you will need to sign and promptly return to us both copies of the Modification Agreement or your loan can not be modified.

**NEW PRINCIPAL BALANCE.** Past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance (the "Past Due Arrearage Amount"). **If you fulfill the terms of the trial period including, but not limited to, making the trial period payments, we will waive ALL unpaid late charges at the end of the trial period.**

**ESTIMATED MONTHLY PAYMENT.** At this time, we are not able to calculate precisely the Past Due Arrearage Amount or the amount of your modified loan payment that will be due after successful completion of the trial period. However, based on information we currently have, your trial period payment should be close to your modified loan payment. As we near the end of the trial period, we will calculate any past due amount to determine your new permanent monthly payment and other modified loan terms.

**ESCROW ACCOUNT.** The terms of your Trial Period Plan and your Modification Agreement will require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Your current loan may also require escrows. If it does not, the previous waiver of escrows is cancelled under your Trial Period Plan. IndyMac Mortgage Services will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that the servicer must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be $1,032.19.

**BORROWER INCENTIVE.** If your monthly mortgage payment (principal, interest, property taxes, hazard insurance, flood insurance, condominium association fees and homeowner's association fees, as applicable, but excluding mortgage insurance) is reduced through the Home Affordable Modification Program by six percent or more and if you make your monthly mortgage payments on time, you will accrue a monthly benefit equal to the lesser of: (i) $83.33 or (ii) one-half of the reduction in your monthly mortgage payment. As long as your mortgage loan does not become 90 days delinquent, we will apply your accrued monthly benefit to your mortgage loan and reduce your principal balance after each of the first through fifth anniversaries of the month in which the Trial Period Plan is executed. If your modified mortgage loan ever becomes 90 days delinquent, you will lose all accrued but unapplied principal reduction benefits and will no longer be eligible to accrue additional principal reduction benefits even if the mortgage loan is later brought current.

**CREDIT COUNSELING.** If you have very high levels of debt you will be required to obtain credit counseling under the Home Affordable Modification program.

**CREDIT REPORTING.** If you were delinquent on your scheduled mortgage payments at the time your trial plan begins, we will continue to report your account to the credit bureaus as delinquent. We will also note that you are paying under a partial payment agreement. If you were current on your scheduled mortgage payment at the time your trial plan begins <u>and you have made your trial period payment for the reporting month within the month in which it was due</u>, we will report your account to the credit bureaus as current, with the added comment that you are paying under a partial payment agreement.

**TITLE ENDORSEMENT.** This modification agreement is contingent on the receipt of an acceptable title endorsement by IndyMac Mortgage Services. An unacceptable title endorsement may result in disqualification of eligibility for this offer.

C1SL-309-02-8

**FREQUENTLY ASKED QUESTIONS**    (ou've got questions, we've got answers.)

**Q. How long will it take to process my modification request and determine if I qualify for the program?**

It may take up to 30 days for us to receive and review your documents. We will process your modification request as quickly as possible. Please note, however, that your modification will not be effective unless you meet all of the applicable conditions, including making all trial period payments.

**Q. What if my trial period payment is less than the payment I currently owe on my loan?**

We will add the difference between the monthly payment that you currently owe on your loan and the trial period payment to your loan balance and allow you to pay it over the remainder of the modified loan term.

**Q. What do you do with my first trial period payment if I do not qualify for the program?**

Your first trial payment will be applied to your existing loan in accordance with the terms of your loan documents. If you don't qualify for the program, we will help you evaluate other options to help you keep your home or ease your transition to a new home.

**Q. Will a foreclosure occur if I participate in the Home Affordable Modification program?**

As long as you comply with the terms of the Trial Period Plan, we will not start foreclosure proceedings or conduct a foreclosure sale if foreclosure proceedings have started. If you fail to comply with the terms of the Trial Period Plan and do not make other arrangements, your loan will be enforced according to its original terms, which could include foreclosure.

**Q. What happens to my trial period payments if I do not comply with the terms of the Trial Period Plan?**

Your trial period payments will be applied to your existing loan according to the terms of your loan documents.

**Q. If I get a Home Affordable Modification, can my modified loan terms ever revert to the original loan terms?**

No. This is one of the advantages of the Home Affordable Modification program. Once your loan is modified, the new terms stay in place for the remainder of your loan.

**Q. Do all borrowers have to sign the Trial Period Plan and other documents?**

Unless a borrower or co-borrower is deceased, all borrowers who signed the original loan documents or their duly authorized representative(s) must sign the Trial Period Plan, the Modification Agreement and all other required modification documents. Contact your servicer if it would be difficult or impossible for you to comply with this requirement.

**Q. Could my trial period payment be more than my current payment?**

Yes. For example, if your current payment does not include an escrow payment and you are now required to make monthly escrow payments, your trial period payment could be higher than your current payment. Note, however, that the increase in your payment under these circumstances would be offset by other tax and insurance bills you would no longer have to pay directly as we will pay those for you out of your escrow account.

Reference #: 3001242449K4093

Investor Loan #: 0121725935

# HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN
## (Step One of Two-Step Documentation Process)

Trial Period Plan Effective Date: 2/1/2010
Borrower ("I")[1]: Cesar M Doble and Martha E Doble
Lender or Servicer ("Lender"): IndyMac Mortgage Services, a division of OneWest Bank, FSB
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 3/9/2005
Loan Number: 3001242449
Property Address ("Property"): 1466 Heatherwood Ave, Chula Vista, CA 91913

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both the Lender and I sign it and Lender provides me with a copy of this Plan with the Lender's signature.

1.  **My Representations. I certify, represent to Lender and agree:**

    A.  I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  I live in the Property as my principal residence, and the Property has not been condemned;

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.  I am providing or already have provided documentation for all income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Reference #: 3001242449K4093

E. Under penalty of perjury, all documents and information I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct;

F. If Lender requires me to obtain credit counseling, I will do so; and

G. If this debt was discharged in a bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Plan.

2.  **The Trial Period Plan.** On or before each of the following due dates, I will pay the Lender the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $1,032.19.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1* | $3,592.74 | 2/1/2010* |
| 2 | $3,592.74 | 3/1/2010 |
| 3 | $3,592.74 | 4/1/2010 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which may be finalized in accordance with Section 3 below. The actual payments under the modified loan terms, however, may be different.

   **\*I understand that my first payment and this signed Trial Period Plan must be received by the Lender no later than 2/1/2010 or I may not be accepted into the Home Affordable Modification Program.**

I agree that during the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A. TIME IS OF THE ESSENCE under this Plan. This means I must make all payments on or before the days that they are due;

B. Except as set forth in Section 2.C. below, the Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action. All rights to such notices are hereby waived by me to the extent permitted by applicable law;

C. If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Lender may foreclose if I have not made each and every Trial Period Payment that is due through the end of the month preceding the month in which the foreclosure sale is scheduled to occur. If a foreclosure sale occurs pursuant to this Section 2.C., this Plan shall be deemed terminated;

D. The Lender will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. I understand the Lender will not pay me interest on the amounts held in the account. If there is any remaining money after such payment is applied, such remaining funds will be held by the Lender and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E. When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F. If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; (iii) the Lender determines that any of my representations in Section 1 were not true and correct as of the date I signed this Plan or are no longer true and correct at any time during the Trial Period; or (iv) I do not provide all information and documentation required by the Lender, then the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

Reference #: 3001242449K4093

G. I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify or if I fail to meet any one of the requirements under this Plan. If, under the Lender's procedures, a title endorsement(s) and/or subordination agreement(s) are required to ensure that the modified Loan Documents retain first lien position and are fully enforceable, I understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents or execute the Modification Agreement if the Lender has not received an acceptable title endorsement(s) and/or subordination agreement(s) from the other lien holders, as Lender determines necessary.

3. **The Modification.** I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Lender will determine the new payment amount. If (1) my representations in Section 1 were and continue to be true in all material respects; (2) I comply with the requirements in Section 2; (3) I provide the Lender with all required information and documentation; and (4) the Lender determines that I qualify, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. The Modification Agreement will provide that, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the loan unless permitted by applicable State or Federal law, rules or regulations. This Plan shall terminate the day before the Modification Effective Date and the Loan Documents, as modified by a fully executed Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan. Provided I make timely payments during the Trial Period and both the Lender and I execute the Modification Agreement, I understand that my first modified payment will be due on the Modification Effective Date (i.e. on the first day of the month following the month in which the last Trial Period Payment is due).

4. **Additional Agreements.** I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Plan (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

   B. To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

   C. If Lender may establish an escrow account under applicable law, this Plan constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, I have been advised of the amount needed to fund my escrow account and I agree to the establishment of an escrow account. If the Loan Documents do not currently have escrow account provisions that govern, among other things, the collection, posting and payment of Escrow Items to and from the escrow account, the Lender will include provisions in my Modification Agreement that are similar to the escrow account provisions in the Fannie Mae/Freddie Mac Uniform Instrument for the state in which I live.

   D. That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.

   E. That I will execute such other and further documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Plan; or (ii) correct the terms and conditions of this Plan if an error is discovered.

Reference #: 3001242449K4093

F.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.  I understand and consent to the disclosure of my personal information and the terms of this Trial Period Plan and the Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the  Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

G.  That, as of the Trial Period Plan Effective Date, I understand that the Lender will only allow the transfer and assumption of this Trial Period Plan to a transferee of my property in the case of my death, divorce or marriage to the same extent as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3.  This Plan may not, under any other circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

In Witness Whereof, the Lender and I have executed this Plan.

IndyMac Mortgage Services,
a division of OneWest Bank, FSB

Lender _____

By: _____

Date _____

Cesar M Doble _____

Date _____

Martha E Doble _____

Date _____

*sign and date*

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3156    3/09 (rev. 8/09) (page 4 of 4 pages)

Reference #: 3001242449K4093

Investor Loan #: 0121725935

# HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN
## (Step One of Two-Step Documentation Process)

Trial Period Plan Effective Date: 2/1/2010
Borrower ("I")[1]: Cesar M Doble and Martha E Doble
Lender or Servicer ("Lender"): IndyMac Mortgage Services, a division of OneWest Bank, FSB
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 3/9/2005
Loan Number: 3001242449
Property Address ("Property"): 1466 Heatherwood Ave, Chula Vista, CA 91913

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both the Lender and I sign it and Lender provides me with a copy of this Plan with the Lender's signature.

1.  **My Representations.** I certify, represent to Lender and agree:

    A.  I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  I live in the Property as my principal residence, and the Property has not been condemned;

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.  I am providing or already have provided documentation for all income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Reference #: 3001242449K4093

E. Under penalty of perjury, all documents and information I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct;

F. If Lender requires me to obtain credit counseling, I will do so; and

G. If this debt was discharged in a bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Plan.

2. **The Trial Period Plan.** On or before each of the following due dates, I will pay the Lender the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $1,032.19.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1* | $3,592.74 | 2/1/2010* |
| 2 | $3,592.74 | 3/1/2010 |
| 3 | $3,592.74 | 4/1/2010 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which may be finalized in accordance with Section 3 below. The actual payments under the modified loan terms, however, may be different.

**\*I understand that my first payment and this signed Trial Period Plan must be received by the Lender no later than 2/1/2010 or I may not be accepted into the Home Affordable Modification Program.**

I agree that during the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A. TIME IS OF THE ESSENCE under this Plan. This means I must make all payments on or before the days that they are due;

B. Except as set forth in Section 2.C. below, the Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action. All rights to such notices are hereby waived by me to the extent permitted by applicable law;

C. If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Lender may foreclose if I have not made each and every Trial Period Payment that is due through the end of the month preceding the month in which the foreclosure sale is scheduled to occur. If a foreclosure sale occurs pursuant to this Section 2.C., this Plan shall be deemed terminated;

D. The Lender will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. I understand the Lender will not pay me interest on the amounts held in the account. If there is any remaining money after such payment is applied, such remaining funds will be held by the Lender and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E. When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F. If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; (iii) the Lender determines that any of my representations in Section 1 were not true and correct as of the date I signed this Plan or are no longer true and correct at any time during the Trial Period; or (iv) I do not provide all information and documentation required by the Lender, the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

Reference #: 3001242449K4093

G. I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify or if I fail to meet any one of the requirements under this Plan. If, under the Lender's procedures, a title endorsement(s) and/or subordination agreement(s) are required to ensure that the modified Loan Documents retain first lien position and are fully enforceable, I understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents or execute the Modification Agreement if the Lender has not received an acceptable title endorsement(s) and/or subordination agreement(s) from the other lien holders, as Lender determines necessary.

3.  **The Modification.** I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Lender will determine the new payment amount. If (1) my representations in Section 1 were and continue to be true in all material respects; (2) I comply with the requirements in Section 2; (3) I provide the Lender with all required information and documentation; and (4) the Lender determines that I qualify, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. The Modification Agreement will provide that, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the loan unless permitted by applicable State or Federal law, rules or regulations. This Plan shall terminate the day before the Modification Effective Date and the Loan Documents, as modified by a fully executed Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan. Provided I make timely payments during the Trial Period and both the Lender and I execute the Modification Agreement, I understand that my first modified payment will be due on the Modification Effective Date (i.e. on the first day of the month following the month in which the last Trial Period Payment is due).

4.  **Additional Agreements.** I agree to the following:

    A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Plan (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

    B.  To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

    C.  If Lender may establish an escrow account under applicable law, this Plan constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, I have been advised of the amount needed to fund my escrow account and I agree to the establishment of an escrow account. If the Loan Documents do not currently have escrow account provisions that govern, among other things, the collection, posting and payment of Escrow Items to and from the escrow account, the Lender will include provisions in my Modification Agreement that are similar to the escrow account provisions in the Fannie Mae/Freddie Mac Uniform Instrument for the state in which I live.

    D.  That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.

    E.  That I will execute such other and further documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Plan; or (ii) correct the terms and conditions of this Plan if an error is discovered.

Reference #: 3001242449K4093

F.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. I understand and consent to the disclosure of my personal information and the terms of this Trial Period Plan and the Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

G.  That, as of the Trial Period Plan Effective Date, I understand that the Lender will only allow the transfer and assumption of this Trial Period Plan to a transferee of my property in the case of my death, divorce or marriage to the same extent as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. This Plan may not, under any other circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

In Witness Whereof, the Lender and I have executed this Plan.

IndyMac Mortgage Services,
a division of OneWest Bank, FSB

_____
Lender

By: _____

_____
Date

_____
Cesar M Doble

_____
Date

_____
Martha E Doble

_____
Date

Reference #: 3001242449K4093

## Home Affordable Modification Program Hardship Affidavit

Borrower Name (first, middle, last): Cesar M Doble
Co-Borrower Name (first, middle, last): Martha E Doble
Property Street Address:   1466 Heatherwood Ave
Property City, ST, Zip:    Chula Vista, CA 91913
Servicer:                 IndyMac Mortgage Services, a division of OneWest Bank, FSB
Loan Number:              3001242449

Date of Birth: 5/22/53
Date of Birth: 12/24/59

In order to qualify for IndyMac Mortgage Services' ("Servicer") offer to enter into an agreement to modify my loan under the federal government's Home Affordable Modification Program (the "Agreement"), I/we am/are submitting this form to the Servicer and indicating by my/our checkmarks ("✓") the one or more events that contribute to my/our difficulty making payments on my/our mortgage loan.

| Borrower | Co-Borrower | |
|---|---|---|
| Yes No<br>☒ ☐ | Yes No<br>☒ ☐ | My income has been reduced or lost. For example: unemployment, underemployment, reduced job hours, reduced pay, or a decline in self-employed business earnings. I have provided details below under "Explanation." |
| Yes No<br>☐ ☐ | Yes No<br>☐ ☐ | My household financial circumstances have changed. For example: death in family, serious or chronic illness, permanent or short-term disability, increased family responsibilities (adoption or birth of a child, taking care of elderly relatives or other family members). I have provided details below under "Explanation." |
| Yes No<br>☐ ☐ | Yes No<br>☐ ☐ | My expenses have increased. For example: monthly mortgage payment has increased or will increase, high medical and health-care costs, uninsured losses (such as those due to fires or natural disasters), unexpectedly high utility bills, increased real property taxes. I have provided details below under "Explanation." |
| Yes No<br>☐ ☐ | Yes No<br>☐ ☐ | My cash reserves are insufficient to maintain the payment on my mortgage loan and cover basic living expenses at the same time. Cash reserves include assets such as cash, savings, money market funds, marketable stocks or bonds (excluding retirement accounts). Cash reserves do not include assets that serve as an emergency fund (generally equal to three times my monthly debt payments). I have provided details below under "Explanation." |
| Yes No<br>☐ ☐ | Yes No<br>☐ ☐ | My monthly debt payments are excessive, and I am overextended with my creditors. I may have used credit cards, home equity loans or other credit to make my monthly mortgage payments. I have provided details below under "Explanation." |
| Yes No<br>☐ ☐ | Yes No<br>☐ ☐ | There are other reasons I/we cannot make our mortgage payments. I have provided details below under "Explanation." |

## Information for Government Monitoring Purposes

The following information is requested by the federal government in order to monitor compliance with federal statutes that prohibit discrimination in housing. **You are not required to furnish this information, but are encouraged to do so. The law provides that a lender or servicer may not discriminate either on the basis of this information, or on whether you choose to furnish it.** If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, the lender or servicer is required to note the information on the basis of visual observation or surname if you have made this request for a loan modification in person. **If you do not wish to furnish the information, please check the box below.**

| BORROWER ☐ I do not wish to furnish this information | | CO-BORROWER ☐ I do not wish to furnish this information | |
|---|---|---|---|
| **Ethnicity:** | ☐ Hispanic or Latino<br>☒ Not Hispanic or Latino | **Ethnicity:** | ☐ Hispanic or Latino<br>☒ Not Hispanic or Latino |
| **Race:** | ☐ American Indian or Alaska Native<br>☒ Asian<br>☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander<br>☐ White | **Race:** | ☐ American Indian or Alaska Native<br>☒ Asian<br>☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander<br>☐ White |
| **Sex:** | ☐ Female<br>☒ Male | **Sex:** | ☒ Female<br>☐ Male |
| **To be Completed by Interviewer** | Interviewer's Name (print or type) | Name/Address of Interviewer's Employer | |
| ☐ Face-to-face interview | Interviewer's Signature        Date | | |
| ☐ Mail | | | |
| ☐ Telephone | Interviewer's Phone Number (include area code) | | |
| ☐ Internet | | | |

## Borrower/Co-Borrower Acknowledgement

1. Under penalty of perjury, I/we certify that all of the information in this affidavit is truthful and the event(s) identified above has/have contributed to my/our need to modify the terms of my/our mortgage loan.
2. I/we understand and acknowledge the Servicer may investigate the accuracy of my/our statements, may require me/us to provide supporting documentation, and that knowingly submitting false information may violate Federal law.
3. I/we understand the Servicer will pull a current credit report on all borrowers obligated on the Note.
4. I/we understand that if I/we have intentionally defaulted on my/our existing mortgage, engaged in fraud or misrepresented any fact(s) in connection with this Hardship Affidavit, or if I/we do not provide all of the required documentation, the Servicer may cancel the Agreement and may pursue foreclosure on my/our home.
5. I/we certify that my/our property is owner-occupied and I/we have not received a condemnation notice.
6. I/we certify that I/we am/are willing to commit to credit counseling if it is determined that my/our financial hardship is related to excessive debt.
7. I/we certify that I/we am/are willing to provide all requested documents and to respond to all Servicer communication in a timely manner. I/we understand that time is of the essence.

Reference #: 3001242449K4093

8. I/we understand that the Servicer will use this information to evaluate my/our eligibility for a loan modification or other workout, but the Servicer is not obligated to offer me/us assistance based solely on the representations in this affidavit.

9. I/we accept and agree to all terms of the Home Affordable Modification Trial Period ("Trial Period") Plan which is incorporated herein by reference as if set forth in full.

10. I/we agree that when the Servicer accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of my loan or foreclosure action and related activities and shall not constitute a cure of my default under my loan unless such payments are sufficient to completely cure my entire default under my loan.

11. I/we agree that any prior waiver as to payment of escrow Items in connection with my loan has been revoked.

12. I/we agree to the establishment of an escrow account and the payment of escrow items if an escrow account never existed on my loan.

13. I/we understand that Servicer will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and Modification Agreement by Servicer to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Homeowner Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

---

Borrower Signature _____  Date _____     Co-Borrower Signature _____  Date _____

E-mail Address: SARDO@YAHOO.com     E-mail Address: _____

Cell Phone # (619)370-5054     Cell Phone # _____

Home Phone # (619)934-3534     Home Phone # (619)934-3534

Work Phone # _____     Work Phone # _____

Social Security # 547 23 1050     Social Security # 571 79 8728

Explanation:

Reference #: 3001242449K4093

Explanation (Continued):

**IndyMac Mortgage Services**
a division of OneWest Bank, FSB℠

IB41127A    7000001281 01.0006.0108 1281/1

Cesar M Doble and Martha E Doble
1466 Heatherwood Ave
Chula Vista, CA 91913-2974

Loan Number: 3001242449

November 30, 2009

Dear Cesar M Doble and Martha E Doble,

Thank you for your recent request to modify the terms of your mortgage serviced by IndyMac
Mortgage Services, a division of OneWest Bank, FSB.

On March 4, 2009 the Department of the Treasury launched the Home Affordable Modification
Program (HAMP). The program was adopted by IndyMac Mortgage Services on August 11, 2009. By
signing up for HAMP, IndyMac Mortgage Services has agreed to follow the rules and guidelines that
have been established by the United States Department of the Treasury. While the program is
designed to help borrowers who are experiencing a financial hardship, not all borrowers will meet
the eligibility qualifications established by the Department of the Treasury, and therefore, not all
borrowers are eligible for a HAMP loan modification.

In reviewing your loan for a possible modification, we have determined that your loan does not
qualify for HAMP because the foreclosure sale process has already been completed.

Please contact us at 1.888.280.6194 if you have any questions.

Sincerely,

Brandon Latman
First Vice President
IndyMac Mortgage Services

www.owb.com

| Form **4506-T** | **Request for Transcript of Tax Return** | |
|---|---|---|
| (Rev. January 2008) | ▶ Do not sign this form unless all applicable lines have been completed.<br>Read the instructions on page 2. | OMB No. 1545-1872 |
| Department of the Treasury<br>Internal Revenue Service | ▶ Request may be rejected if the form is incomplete, illegible, or any required<br>line was blank at the time of signature. | |

**Tip:** Use Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can also call 1-800-829-1040 to order a transcript. If you need a copy of your return, use Form 4506, Request for Copy of Tax Return. There is a fee to get a copy of your return.

| 1a | Name shown on tax return. If a joint return, enter the name shown first. | 1b | First social security number on tax return or employer identification number (see instructions) |
|---|---|---|---|
| 2a | If a joint return, enter spouse's name shown on tax return | 2b | Second social security number if joint tax return |

3   Current name, address (including apt., room, or suite no.), city, state, and ZIP code

4   Previous address shown on the last return filed if different from line 3

5   If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax information.

**IndyMac Mortgage Services, 2900 Esperanza Crossing, Austin, TX 78758**

**Caution:** *DO NOT SIGN this form if a third party requires you to complete Form 4506-T, and lines 6 and 9 are blank.*

6   **Transcript requested.** Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request. ▶   **1040**

  a  **Return Transcript,** which includes most of the line items of a tax return as filed with the IRS. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120A, Form 1120H, Form 1120L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years. Most requests will be processed within 10 business days . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☑

  b  **Account Transcript,** which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns. Most requests will be processed within 30 calendar days  .  ☐

  c  **Record of Account,** which is a combination of line item information and later adjustments to the account. Available for current year and 3 prior tax years. Most requests will be processed within 30 calendar days . . . . . . . . . . . . . . . ☐

7   **Verification of Nonfiling,** which is proof from the IRS that you **did not** file a return for the year. Most requests will be processed within 10 business days . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

8   **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2006, filed in 2007, will not be available from the IRS until 2008. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213. Most requests will be processed within 45 days . . . . . . ☐

**Caution:** *If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.*

9   **Year or period requested.** Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T. For requests relating to quarterly tax returns, such as Form 941, you must enter each quarter or tax period separately.

    **12 / 31 / 2007**      **12 / 31 / 2008**        /   /          /   /

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, **either** husband or wife must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer.

| | | | Telephone number of taxpayer on line 1a or 2a<br>(    ) |
|---|---|---|---|
| **Sign Here** | ▶ Signature (see instructions)<br>**N/A** | Date | |
| | ▶ Title (if line 1a above is a corporation, partnership, estate, or trust) | | |
| | ▶ Spouse's signature | Date | |

For Privacy Act and Paperwork Reduction Act Notice, see page 2.          Cat. No. 37667N          Form **4506-T** (Rev. 1-2008)

Form 4506-T (Rev. 1-2008)

# General Instructions

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate a third party to receive the information. See line 5.

**Tip.** Use Form 4506, Request for Copy of Tax Return, to request copies of tax returns.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series and Form W-2) and one for all other transcripts.

If you are requesting more than one transcript or other product and the chart below shows two different RAIVS teams, send your request to the team based on the address of your most recent return.

**Note.** *You can also call 1-800-829-1040 to request a transcript or get more information.*

## Chart for individual transcripts (Form 1040 series and Form W-2)

| If you filed an individual return and lived in: | Mail or fax to the "Internal Revenue Service" at: |
|---|---|
| District of Columbia, Maine, Maryland, Massachusetts, New Hampshire, New York, Vermont | RAIVS Team Stop 679 Andover, MA 05501 978-247-9255 |
| Alabama, Delaware, Florida, Georgia, North Carolina, Rhode Island, South Carolina, Virginia | RAIVS Team P.O. Box 47-421 Stop 91 Doraville, GA 30362 770-455-2335 |
| Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team Stop 6716 AUSC Austin, TX 73301 512-460-2272 |
| Alaska, Arizona, California, Colorado, Hawaii, Idaho, Iowa, Kansas, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | RAIVS Team Stop 37106 Fresno, CA 93888 559-456-5876 |
| Arkansas, Connecticut, Illinois, Indiana, Michigan, Missouri, New Jersey, Ohio, Pennsylvania, West Virginia | RAIVS Team Stop 6705-B41 Kansas City, MO 64999 816-292-6102 |

## Chart for all other transcripts

| If you lived in or your business was in: | Mail or fax to the "Internal Revenue Service" at: |
|---|---|
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409 801-620-6922 |
| Connecticut, Delaware, District of Columbia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | RAIVS Team P.O. Box 145500 Stop 2800 F Cincinnati, OH 45250 859-669-3592 |

**Line 1b.** Enter your employer identification number (EIN) if your request relates to a business return. Otherwise, enter the first social security number (SSN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 6.** Enter only one tax form number per request.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the information be sent to a third party, the IRS must receive Form 4506-T within 60 days of the date signed by the taxpayer or it will be rejected.

*Individuals.* Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

*Corporations.* Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer.

*Partnerships.* Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 9.

*All others.* See Internal Revenue Code section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the Letters Testamentary authorizing an individual to act for an estate.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. Sections 6103 and 6109 require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, and the District of Columbia for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 12 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to the Internal Revenue Service, Tax Products Coordinating Committee, SE:W:CAR:MP:T:T:SP, 1111 Constitution Ave. NW, IR-6526, Washington, DC 20224. Do not send the form to this address. Instead, see *Where to file* on this page.

1. **Ensure that there are no other tracking labels attached to your package.**

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers without a Daily Pickup**
   - Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   - Hand the package to any UPS driver in your area.
   - Take your package to any location of The UPS Store®, UPS Drop Box, UPS Customer Center, UPS Alliances (Office Depot® or Staples®) or Authorized Shipping Outlet near you. Items sent via UPS Return Services℠ (including via Ground) are also accepted at Drop Boxes.
   - To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.

   **Customers with a Daily Pickup**
   - Your driver will pickup your shipment(s) as usual.

FOLD HERE

# EXHIBIT D

73090          11-24
ffice AU #      1210(8)

rator I.D.: cu019687

**PERSONAL MONEY ORDER**

7308001280

TO THE ORDER OF *One West Bank*

January 26, 2010

*One thousand dollars and no cents\*\*\**

\*\*$1,000.00\*\*

LS FARGO BANK, N.A.
BIRCH RD
A VISTA, CA 91915
NQUIRIES CALL (480) 394-3122

*Loan # 30012 42 449*

VOID IF OVER US $ : 1,000.00

Purchaser's Signature

⑄730800⑈280⑈ ⑆⑆⑆121000248⑆⑆4861  505386⑈

*hsdrfication  ref: 3001242449K4063*

**PERSONAL MONEY ORDER**    7308001281

73080    -11-24-
Office AU #    1210(8)
perator I.D.:    cs019687

January 26, 2010

PAY TO THE ORDER OF  *One West Bank*

***One thousand dollars and no cents***    **\$1,000.00**

VOID IF OVER US $ 1,000.00

WELLS FARGO BANK, N.A.
2160 BIRCH RD
CHULA VISTA, CA 91915
FOR INQUIRIES CALL (480) 394-3122    Purchaser's Signature

Loan# 30012.42449

⑆73080012811⑆ ⑉121000248⑉4861  505386⑇

**PERSONAL MONEY ORDER**                 7308001282

73080
ffice AU #          11-24
1210(6)
rator I.D.:  cu019587

Y TO THE ORDER OF  *One West Bank*                    **January 26, 2010**

*One thousand dollars and no cents***                **$1,000.00**

LLS FARGO BANK, N.A.
0 BIRCH RD.
ULA VISTA, CA 91915
R INQUIRIES CALL (480) 394-3122          VOID IF OVER US $  1,000.00

                                          Purchaser's Signature

Loan # 3001242449

⑆7308001282⑆ ⑈121000248⑈4861 50.5386⑈

| 73086 | 11-24 |
|-------|-------|
| Office AU # | 12108) |

# PERSONAL MONEY ORDER

SERIAL #:  7308001283

ACCOUNT #:  4861-505386

Purchaser:        OR MARTHA ELENA DOBLE
Purchaser Account:  0811209550
Operator I.D.:      cu019687

**January 26, 2010**

PAY TO THE ORDER OF *One West Bank*

***Five hundred ninety-two dollars and 74 cents***

**\*\*$592.74\*\***

**WELLS FARGO BANK, N.A.**
2150 BIRCH RD
CHULA VISTA, CA 91915
FOR INQUIRIES CALL (480) 394-3122

NOTICE TO PURCHASER--IF STOP PAYMENT IS PLACED ON THIS
INSTRUMENT, WELLS FARGO BANK MAY IMPOSE A WAITING
PERIOD BEFORE ISSUING A REPLACEMENT OR REFUND.

VOID IF OVER US $   592.74

**NON-NEGOTIABLE**

## Purchaser Copy

B-004   7A203  03045462

# EXHIBIT E

# OFFICIAL CHECK

SERIAL #: 7308001344

ACCOUNT#: 4861-505345

February 23, 2010

TO THE ORDER OF    ***ONE WEST BANK***
***LOAN#: 3001242449***

***$3,592.74**

*Three thousand five hundred ninety-two dollars and 74 cents***

VOID IF OVER US $   3,592.74

NON-NEGOTIABLE

NOTICE TO PURCHASER–IF THIS INSTRUMENT IS LOST,
STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION
AND REISSUANCE. AS A CONDITION TO CANCELLATION AND
REISSUANCE, WELLS FARGO & COMPANY MAY IMPOSE A
FEE AND REQUIRE AN INDEMNITY AGREEMENT AND BOND.

**Purchaser Copy**

.S FARGO & COMPANY ISSUER
NTGOMERY STREET
RANCISCO, CA 94163
LE AT WELLS FARGO BANK, N.A.
IQUIRIES CALL (480) 394-3122



PAY TO THE ORDER OF    ***ONE WEST BANK***
***LOAN#: 3001242449***

***Three thousand five hundred ninety-two dollars and 74 cents***

OFFICIAL CHECK

7308001344

February 23, 2010

***$3,592.74**

VOID IF OVER US $ 3,592.74

CONTROLLER

WELLS FARGO & COMPANY ISSUER
420 MONTGOMERY STREET
SAN FRANCISCO, CA 94163
PAYABLE AT WELLS FARGO BANK, N.A.
FOR INQUIRIES CALL (480) 394-3122

# EXHIBIT F



UPS

**United States**

Log-In ▾    Search

My UPS ▴    Shipping    **Tracking**    Freight    Locations    Support    Business Solutions

Tracking

→ Track Shipments
  › Track by Reference
  › Track by E-mail
  › Signature Tracking
  › Import Tracking Numbers
  › SMS Tracking
→ Track with Quantum View
→ Access Flex Global View
→ Integrate Tracking Tools
◦ Void a Shipment ◦

**Search Support**

Enter a keyword:

Search →

Solutions for your business

Come, explore →

**UPS CampusShip**

Empower your workforce.
Enable shipping from multiple
locations. Maintain central
control.
→ View Demo

# Track Shipments

Track Packages & Freight | Quantum View | Flex Global View

## Tracking Detail

Print ⎙    Help ▾

**Your package has been delivered. To view Proof of Delivery, please select the link.**

Tracking Number:        1Z4F94720291187934

Status:                 Delivered ▾    Proof of Delivery ⎙

Delivered On:           05/27/2010 5:17 P.M.

Location:               OTHER-RELEASED

Delivered To:           CHULA VISTA, CA, US

Shipped/Billed On:      05/25/2010

Type:                   Package

Service:                2ND DAY AIR

**Need to send e-mail notifications?**

**Use UPS Quantum View Notify®** to send delivery or exception notifications.

E-mail Notifications

To view additional tracking information, please log in ⎙ to My UPS.

⊞ Show Package Progress

NOTICE: UPS authorizes you to use UPS tracking systems solely to track shipments tendered by or for you to UPS for delivery and for no other purpose. Any other use of UPS tracking systems and information is strictly prohibited.

← Back to Previous

---

**Getting Started**

How To Register for My UPS
How To Open an Account
How To Ship
How To Track
Deliveries/UPS InfoNotice

**Industry Solutions**

Healthcare
High Tech
More...

**Subscribe to E-mail**

Your E-mail Address

Sign Up →

View Examples ⎙

ups.com

Register
Log In ⎙
Shipping
Tracking
Freight
Locations
Support
Business Solutions
Site Guide

UPS Global

**Support**

E-mail UPS
Contact UPS
Fuel Surcharge
Privacy Policy ⎙
Website Terms of Use ⎙
Trademarks ⎙
UPS Tariff/Terms and Conditions of Service ⎙

**Protect Against Fraud**

UPS Careers

**Other Sites**

UPS Supply Chain Solutions
UPS Express Critical
UPS Capital
UPS Mail Innovations
Customer Solutions
UPS Logistics Technologies
UPS Pressroom
UPS Investor Relations

**About UPS**

Highlights

Copyright © 1994-2010 United Parcel Service of America, Inc. All rights reserved.

Visit ups.com® or call 1-800-PICK-UPS® (1-800-742-5877)
to schedule a pickup or find a drop off

UPS 2nd Day Air®

https://www.campusship.ups.com/cship/create?ActionOriginPair=print_Printer

International Shipping Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air ("Warsaw Convention") and/or the Convention on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

DANNY GARCIA
512/918-7043
ONEWEST BANK
2900 ESPERANZA CROSSING
AUSTIN TX 78758

0.0 LBS    LTR        1 OF 1

SHIP TO:
CESAR & MARTHA DOBLE
1466 HEATHERWOOD AVE.
CHULA VISTA  CA 91913-2974

CA 925 9-05

UPS 2ND DAY AIR        2
TRACKING #: 1Z 4F9 472 02 9118 7934

BILLING: P/P

Cost Center: 70831

CS 12.0.26.    WXFIE60 03.0A 04/2010        TM

5/25/2010

CESAR & MARTHA DOBLE
1466 HEATHERWOOD AVE
CHULA VISTA CA 91913-2974

P:PURPLE 8.5

0516-5224

1Z4F94720291187934

shipping document
window from th

se this envelope for:
nd
dard
y Select®
dwide Expedited®



# MAKING HOME AFFORDABLE



## NOTICE TO BORROWERS

Be advised that you are signing the following documents under penalty of perjury. Any misstatement of material fact made in the completion of these documents including but not limited to misstatement regarding your occupancy in your home, hardship circumstances, and/or income will subject you to potential criminal investigation and prosecution for the following crimes: perjury, false statements, mail fraud, and wire fraud. The information contained in these documents is subject to examination and verification. Any potential misrepresentation will be referred to the appropriate law enforcement authority for investigation and prosecution.

By signing the enclosed documents you certify, represent and agree that:

"Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the program, are true and correct."

## SIGTARP Hotline

If you are aware of fraud, waste, abuse, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program, please contact the SIGTARP Hotline by:

Online Form: www.SIGTARP.gov
Phone:        877-SIG-2009 (toll-free)
Fax:          202-622-4559
Mail to:      Hotline
              Office of the Special Inspector General
              For The Troubled Asset Relief Program
              1500 Pennsylvania Ave., NW, Suite 1064
              Washington, D.C. 20220

For all other inquiries related to your mortgage, please contact your Lender.

**ELPING YOU STAY IN YOUR HOME.**



**MAKING HOME AFFORDABLE**

## IndyMac Mortgage Services
a division of OneWest Bank®, FSB

*You may be able to make your payments more affordable.*
*Act now to get the help you need!*

May 6, 2010
IB505058  2000000103 78

Cesar M Doble and Martha E Doble
1466 Heatherwood Ave
Chula Vista, CA 91913-2974

| | |
|---|---|
| Loan #: | 3001242449 |
| Investor Loan #: | 121725935 |
| Reference #: | 3001242449-21672-04232010 |
| Property Address: | 1466 Heatherwood Ave |
| | Chula Vista, CA 91913 |

Dear Cesar M Doble and Martha E Doble,

Congratulations! You are eligible for a Home Affordable Modification.  As previously described, if you comply with the terms of the Home Affordable Modification  Trial Period Plan, we will modify your mortgage loan and waive all prior late charges that remain unpaid.

The enclosed Home Affordable Modification Agreement ("Modification Agreement") reflects the proposed terms of your modified mortgage.

How to Accept This Offer:

**STEP 1    COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE**

To accept this offer, you must sign, have notarized and return both copies of the Modification Agreement to us in the enclosed, pre-paid envelope by 5/28/2010.  If the Modification Agreement has notary provisions at the end, you must sign both copies before a notary public and return the notarized copies to us. We encourage you to make a copy of all documents for your records. If you do not send both signed copies of the Modification Agreement by the above date, you must contact us if you still wish to be considered for this program and have your loan modified.

**STEP 2    CONTINUE TO MAKE YOUR TRIAL PERIOD PAYMENTS ON TIME**

Be certain to make any remaining trial period payments on or before the dates they are due. If the trial period payments are made after their due dates or in amounts different from the amount required, your loan may not be modified.

To better understand the proposed terms of your modified mortgage, please read the attached summary of your modified mortgage and the Modification Agreement.

We look forward to hearing from you no later than 5/28/2010.

Sincerely,

Brandon Latman
First Vice President
IndyMac Mortgage Services, a division of OneWest Bank®, FSB

Attachments:  Summary of Your Modified Mortgage, Two copies of the Modification Agreement
2010/MBS 4829/3001242449-21672-04232010

MCL-309-09-08

This company is a debt collector and any information obtained will be used for that purpose. However, if you have filed a bankruptcy petition and there is either an "automatic stay" in effect in your bankruptcy case, or your debt has been discharged pursuant to the bankruptcy laws of the United States, this communication is intended solely for informational purposes.

Member
FDIC

© 2010 IndyMac Mortgage Services, a division of OneWest Bank, FSB. Registered trade/service marks are the property of OneWest Bank, FSB and/or its subsidiaries.

IBS 4829
262010/MBS 4829/3001242449-21672-04232010

MCL-309-09-08

**SUMMARY**

**NEW PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.

**INTEREST RATE.** The interest rate on your modified loan will be adjusted as noted in the attached Modification Agreement in Section 3.C.

**BALLOON PAYMENT.** To further reduce your monthly mortgage payment, we have amortized your loan over 363 months. By extending the amortization we are able to offer you lower payments. Because the loan is amortized over a term that is longer than your repayment period you will have a balloon payment due when the loan is paid off. Please refer to the enclosed modification agreement for additional details about the balloon payment.

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. IndyMac Mortgage Services will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that IndyMac Mortgage Services must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be $1,013.36. This amount is included in the loan payment noted in Section 3.C. of the enclosed Modification Agreement; you do not need to remit this amount separately.

**PAYMENT SCHEDULE.** The enclosed Modification Agreement includes a payment schedule in Section 3.C. showing your payment plan for the life of your modified loan after the trial period.

**FEES.** There are no fees or other charges for this modification.

**REPRESENTATIONS.** Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth in the "My Representations" section are true and accurate. If you have any questions, please contact us at 1.800.781.7399.

**BORROWER INCENTIVE.** If you make your monthly payments on time, you will accrue a monthly benefit equal to $46.20. As long as your mortgage loan does not become 90 days delinquent, we will apply your accrued monthly benefit to your mortgage loan and reduce your principal balance after each of the first through fifth anniversaries of the month in which the Trial Period Plan is executed. If your modified loan ever becomes 90 days delinquent, you will lose all accrued but unapplied principal reduction benefits and will no longer be eligible to accrue additional principal reduction benefits even if the mortgage loan is later brought current.

Investor Loan #: 121725935                    Reference #: 3001242449-21672-04232010

After Recording Return To:
IndyMac Mortgage Services, a division of OneWest Bank, FSB
Mailcode: IndyMac-12
2900 Esperanza Crossing
Austin, TX 78758

This document was prepared by _____

_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I"):[1] Cesar M Doble and Martha E Doble
Lender or Servicer ("Lender"): IndyMac Mortgage Services, a division of OneWest Bank, FSB
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 3/9/2005
Loan Number: 3001242449
Property Address ("Property"): 1466 Heatherwood Ave, Chula Vista, CA 91913

Recorded on 3/16/2005 in Book or Liber _____ at page(s) 18401, or Instrument or Document No. 2005-0216574 of the official records of San Deigo, California. If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifiying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157                                                    3/09 (rev. 8/09) (page 1 of 9 pages)

Reference #: 3001242449-21672-04232010

1.  **My Representations.** I certify, represent to Lender and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  I live in the Property as my principal residence, and the Property has not been condemned;

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G.  I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B.  I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 6/1/2010 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 6/1/2010.

Reference #: 3001242449-21672-04232010

A. The new Maturity Date will be: 4/1/2035. The payments in the chart below are not sufficient to pay your debt in full. On the Maturity Date, based on the scheduled payments below, a Balloon Payment of $208,943.25 will remain and is due on the Maturity Date.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $734,802.85 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 2.000% will begin to accrue on the New Principal Balance as of 5/1/2010 and the first new monthly payment on the New Principal Balance will be due on 6/1/2010. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 5/1/2010 | $2,699.59 | $1,013.36, may adjust periodically | $3,712.95, may adjust periodically | 6/1/2010 | 60 |
| 6 | 3.000% | 5/1/2015 | $3,023.31 | May adjust periodically | May adjust periodically | 6/1/2015 | 12 |
| 7 | 4.000% | 5/1/2016 | $3,356.15 | May adjust periodically | May adjust periodically | 6/1/2016 | 12 |
| 8 | 5.000% | 5/1/2017 | $3,695.92 | May adjust periodically | May adjust periodically | 6/1/2017 | 12 |
| 9-25 | 5.125% | 5/1/2018 | $3,738.14 | May adjust periodically | May adjust periodically | 6/1/2018 | 203 |

An estimated balloon payment of $208,943.25 is due on 4/1/2035 for your loan to be paid in full.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

Reference #: 3001242449-21672-04232010

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, Impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

Reference #: 3001242449-21672-04232010

D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

Reference #: 3001242449-21572-04232010

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows:  If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage.  However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer.  If Lender exercises this option, Lender shall give me notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage.  If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

Reference #: 3001242449-21672-04232010

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

Reference #: 3001242449-21872-04232010

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. THIS LOAN IS A BALLOON LOAN AND IS PAYABLE IN FULL AT MATURITY. THIS MEANS THAT YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE AT THE MATURITY DATE, AND LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE BE REQUIRED TO REPAY THE LOAN OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

In Witness Whereof, the Lender and I have executed this Agreement.

Lender _____

By: _____

Date _____

Mortgage Electronic Registration
Systems, Inc. - Nominee for Lender

Cesar M Doble _____
June 1, 2010
Date

Martha E Doble _____
6/1/2010
Date

_____ [Space Below This Line For Acknowledgement]_____

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157                                                                                    3169 (rev. 8/09) (page 8 of 9 pages)

## Notary Section

**STATE OF CALIFORNIA**          )
                                  ) ss.:

**COUNTY OF SAN DEIGO**          )

On the _1st_ day of _JUNE_ in the year _2010_ before me, the undersigned, a Notary Public in and for said State, personally appeared _CESAR M. DOBLE and MARTHA E. DOBLE_

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies) and that by his/her/their signature(s) on the instrument, the individual(s) or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Signature

_ANDY P. SUGAPONG._
Notary Printed Name

Notary Public; State of _CALIFORNIA_
Qualified in the County of _SAN DIEGO_
My commission expires: _JAN. 20, 2014_
Official Seal:

**ANDY P. SUGAPONG**
COMM. # 1874210
NOTARY PUBLIC - CALIFORNIA
SAN DIEGO COUNTY
COMM. EXPIRES JAN. 20, 2014

# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of SAN DIEGO

On JUNE 1, 2010 before me, ANDY P. SUGAPONG NOTARY PUBLIC,
(Here insert name and title of the officer)

personally appeared CESAR M. DOBLE and MARTHA E. DOBLE

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

**ANDY P. SUGAPONG**
**COMM. # 1874210**
**NOTARY PUBLIC · CALIFORNIA**
**SAN DIEGO COUNTY**
**COMM. EXPIRES JAN. 29, 2014**

_____                    (Notary Seal)
Signature of Notary Public

---

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____   Document Date_____

_____
(Additional information)

### CAPACITY CLAIMED BY THE SIGNER
- ☐ Individual (s)
- ☐ Corporate Officer

  _____
  (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other_____

### INSTRUCTIONS FOR COMPLETING THIS FORM
*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is/are) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
  ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document.

# EXHIBIT G

haser:  OR MARTHA ELENA DOBLE
haser Account: 0811209550
rator I.D.:   cu020856        cu008576

Y TO THE ORDER OF    ***INDYMAC***
                     ***LOAN # 3001242449-21672-04232010***

June 02, 2010

*Three thousand seven hundred twelve dollars and 95 cents***

**$3,712.95**

LLS FARGO & COMPANY ISSUER
MONTGOMERY STREET
FRANCISCO, CA 94163
ABLE AT WELLS FARGO BANK, N.A.
INQUIRIES CALL (480) 394-3122

NOTICE TO PURCHASER–IF THIS INSTRUMENT IS LOST,
STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION
AND REISSUANCE. AS A CONDITION TO CANCELLATION AND
REISSUANCE, WELLS FARGO & COMPANY MAY IMPOSE A
FEE AND REQUIRE AN INDEMNITY AGREEMENT AND BOND.

VOID IF OVER US $   3,712.95

**NON-NEGOTIABLE**

## Purchaser Copy

**PRINTED ON LINEMARK PAPER · HOLD TO LIGHT TO VIEW · FOR ADDITIONAL SECURITY FEATURES SEE BACK**

**OFFICIAL CHECK**        7308001452

ator I.D.:  cu020856      cu008576

Y TO THE ORDER OF    ***INDYMAC***
                     ***LOAN # 3001242449-21672-04232010***

June 02, 2010

*Three thousand seven hundred twelve dollars and 95 cents***

**$3,712.95**

LLS FARGO & COMPANY ISSUER
MONTGOMERY STREET
FRANCISCO, CA 94163
ABLE AT WELLS FARGO BANK, N.A.
INQUIRIES CALL (480) 394-3122

VOID IF OVER US $   3,712.95

CONTROLLER

⑆7308001452⑆ ⑉121000248⑈4861 505345⑈

# EXHIBIT H

IndyMac Mortgage Services,
a division of OneWest Bank, FSB
6900 Beatrice Drive • Kalamazoo, MI 49009

**ESCROW ACCOUNT**

**DISCLOSURE STATEMENT**

DATE: June 14, 2010
LOAN NUMBER: 3001242449

For statement questions,
Please call Customer Service at
1.800.781.7399

Visit our website at:
www.owb.com

#BWNDXCT
#668944242100306 1#

CESAR M DOBLE
MARTHA E DOBLE                    2828/FQ
1466 HEATHERWOOD AVE
CHULA VISTA CA 91913-2974

IF YOU ARE IN ACTIVE BANKRUPTCY, PLEASE CALL CUSTOMER SERVICE AT 800-781-7399 TO CONFIRM POST PETITION
PAYMENT AMOUNT. PLEASE BE ADVISED THAT THIS STATEMENT IS NOT BEING USED TO COLLECT A DEBT, BUT IS FOR
INFORMATIONAL PURPOSES ONLY.

### YOUR MONTHLY MORTGAGE PAYMENT MAY BE CHANGING – THIS NOTICE WILL HELP YOU UNDERSTAND WHY

As you know, we maintain an escrow account for your mortgage which is used to pay such items as
property taxes, insurance premiums, or mortgage insurance. The escrow account must be reviewed at
least annually to determine whether enough funds are being collected each month, and whether the account
has a shortage or surplus. This notice provides all of the information required by federal regulations
to help you understand how IndyMac Mortgage Services calculates your monthly escrow payment and
determines the proper account balance required. Please take a few minutes to read this notice
carefully. It has been provided to answer most of your questions.

### PART 1 – WHAT ESCROW AMOUNTS CAN I EXPECT INDYMAC MORTGAGE SERVICES TO PAY IN THE COMING 12 MONTHS?

We expect to disburse money from your escrow account to pay certain escrow bills as they are due. We
anticipate paying these amounts for the next 12 months to help us determine how much money is needed
in your escrow account. The following are our estimates:

COUNTY TAX      $11,239.26      HAZARD INS      $921.00

The total amount of all of these estimated escrow payments is      $12,160.26. Your normal escrow
payment must be one-twelfth of the total annual amount. The monthly escrow payment for your mortgage is
$1,013.36 based on this information.

### PART 2 – WHAT IS MY NEW MORTGAGE PAYMENT AMOUNT?

Your total monthly mortgage payment includes the monthly escrow payment. It also includes the monthly
amount for repayment of your loan (principal and interest) and other amounts, for services you have
requested. The following is a breakdown of the new monthly mortgage payment amount:

| | | |
|---|---|---|
| Loan Payment (principal and interest): | $3,240.95 | (this is determined from your Loan Note) |
| Escrow Payment (tax and insurance): | $1,013.36 | (see Part 1 for explanation) |
| Escrow Shortage/Surplus: | $2,167.76 | (see Part 3 for explanation) |
| Optional Services: | $0.00 | (for customers selecting optional services) |
| Miscellaneous: | $0.00 | |
| Less: Buydown/Assistance Payment: | $0.00 | |
| **TOTAL NEW MORTGAGE PAYMENT IS** | **$6,422.07** | BEGINNING ON August 01, 2010. |

Note: Your monthly payment may also change in the future if you have an adjustable rate mortgage,
buydown/assistance subsidies, select optional services or you have a surplus less than $50.00.

Your new payment amount will be      $4,254.31   if you pay your shortage in a lump sum.

### PART 3 – WHY IS THERE A SHORTAGE OR SURPLUS IN MY ESCROW ACCOUNT?

We anticipate that your escrow balance will be $19,933.06- at the end of July. We require that
your escrow balance be $6,080.10 at that time. This results in a shortage of $26,013.16.

If your escrow account started with the required beginning balance, then the account would reach a
low point (or minimum balance) at some point in the next 12 months of $2,026.72. This low point
or minimum balance cannot be more than is allowable under federal regulations, under your state's laws/
regulations, or by the specific terms of your mortgage contract. Information on the reverse side below
help you understand how much money we need in the escrow account and how it is used.

**IndyMac Mortgage Services,**
a division of OneWest Bank, FSB