1          UNITED STATES BANKRUPTCY COURT

2          SOUTHERN DISTRICT OF CALIFORNIA

3          JUDGE MARGARET M. MANN, PRESIDING

4

5

6   IN THE MATTER OF:                    )
                                         )
7                                        )
    CESAR M. DOBLE                       )
8   _____ )  CASE NO. 10-11296-MM
                                         )
9   CESAR DOBLE                          )  ADV. NO. 11-90308
                                         )
10  v.                                   )
                                         )
11  DEUTSCHE BANK NATIONAL TRUST         )
    COMPANY; ONEWEST BANK                )
12  _____)

13

14

15      MOTION TO VACATE ENTRY OF DEFAULT AGAINST
         DEUTSCHE BANK NATIONAL TRUST COMPANY
16        AND STATUS CONFERENCE ON COMPLAINT
                    (FR 7/24/12)

17

18

19

20      REPORTER'S TRANSCRIPT OF PROCEEDINGS

21             SAN DIEGO, CALIFORNIA

22          WEDNESDAY, OCTOBER 17, 2012

23
    U.S. BANKRUPTCY COURT              BY PATRICIA A. CALLIHAN
24  DEPARTMENT NO. 1                   CSR 13375
    325 W. F STREET
25  SAN DIEGO, CA  92101

1                                 APPEARANCES

2       FOR THE PLAINTIFF:

3       ANKCORN LAW FIRM
        BY MARK ANKCORN
4       9845 ERMA ROAD, SUITE 300
        SAN DIEGO, CALIFORNIA  92131
5

6       FOR THE DEFENDANTS:

7       ALLEN MATKINS
        BY ROBERT R. BARNES
8       501 WEST BROADWAY, 15TH FLOOR
        SAN DIEGO, CALIFORNIA  92101
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    UNITED STATES BANKRUPTCY COURT

1                              -o0o-

2          THE CLERK:  In the matter of *Cesar Doble v.*

3  *Deutsche and OneWest Bank*, motion to vacate entry of default.

4              MR. ANKCORN:  Good morning, your Honor.

5              Mark Ankcorn appearing for Cesar Doble.

6              MR. BARNES:  Good morning, your Honor.

7              Robert Barnes, Allen Matkins, on behalf of OneWest

8  Bank FSB and Deutsche Bank National Trust Company as trustee.

9          THE COURT:  All right.  The Court has carefully

10 reviewed the pleadings that were submitted by both of the

11 parties, and I believe that they were very helpful in helping

12 the Court to sort through what are some very complex issues

13 procedurally, legally and factually, because despite the

14 lengthy history of this matter, it is time to rule and move

15 on, and the Court is prepared to do that.

16          The Court is going to give both of you some

17 tentative thinking to enable you to respond.  I have begun

18 preparing a memorandum decision which might -- I might use as

19 a scheduling order, but some written ruling, because I found

20 after reading the last transcript that the complexity of this

21 doesn't lend itself well to oral rulings, which is why I

22 actually prepared at the end of the day a scheduling order to

23 make my thinking clear before.

24          So one of the challenges in analyzing this matter

25 is that there are numerous potential bases for the sanctions

1    and the relief sought under the law, which overlap in some

2    respects and are intersecting and separate in other respects.

3    There are different types of damages sought, and they're

4    sought in two separate procedural vehicles:  The complaint

5    and the OSC.  So the Court, in determining how do we resolve

6    this matter, has organized this in a way that goes by the

7    nature of the damages that are requested for, in the Court's

8    mind, lack of a better way, although I realize that the

9    analysis is complex.

10           Let me start first of all with the initial question

11   that must be asked, which is:  Does the Court have

12   jurisdiction?  And the Court believes, obviously, that the

13   Court has subject matter jurisdiction over this matter.  And

14   the early cases discussing the *Stern* case, although they

15   raise the subject matter of jurisdiction, that ended up with

16   no adherence to the view that was affected.  The issue is

17   whether the Court has final authority to rule on these

18   matters, and the Court believes that it does as to most of

19   the procedural issues in front of it.

20           First of all, the Court believes that it has

21   jurisdiction over most if not all of the complaint and the

22   authority -- final authority to enter a final order in this

23   case, and the reason for that is that the gravamen of the

24   complaint is really an objection to claim, which is the core

25   and the essential function of the bankruptcy system.  And

1    that was noted in *Stern*.  And the Court -- there are numerous

2    cases that have enabled the bankruptcy court to liquidate

3    claims.  The only one out of the bankruptcy appellate panel

4    from the ninth circuit -- and the ninth circuit, as I think

5    you may be aware, in the *Bellingham* case, has not ruled -- is

6    a case called *Deitz*, found at 469 B.R. 11, and it was a

7    nondischargeability action but held that the bankruptcy court

8    does have the ability to also liquidate the claim.  And

9    because the Court finds that that's essentially what is

10   involved in the complaint, the Court finds that it has the

11   final authority to enter a judgment on it.

12           Now, the one exception that deserves mention that

13   would potentially apply here, but the Court doesn't agree, is

14   with regard to the fifth cause of action, the loan

15   modification cause of action.  And the Court finds that it

16   nevertheless still has final authority to enter a judgment in

17   that case because the final authority is derived from the

18   fact that the facts are intertwined with those of not only

19   the claim objection, but also the bankruptcy process of what

20   needs to be paid by the Dobles in their Chapter 13 plan.  And

21   the loan modification claim made in its essence by Mr. Doble

22   is that there was a loan modification, and it set payments of

23   thirty-five hundred ninety-two dollars and, I think,

24   seventy-four cents.  And if that in fact was the payment

25   amount, then that has an impact on what needs to be paid in

 1    the plan and what the amount of the arrearages as part of the

 2    secured claim.  The Court finds that those issues are

 3    inextricably intertwined and believe that its final authority

 4    derives from that.

 5            Having said that, though, to the extent that there

 6    might be tort damages that flow from that, that go to augment

 7    the estate, the issue would become less clear; however, not

 8    to presage all of my ruling, the Court does conclude that the

 9    loan modification cause of action is not viable, so the Court

10    intends to dismiss that.

11            The parties have their rights under Bankruptcy Rule

12    9033 to take this matter to the district court if they wish,

13    but it is incumbent upon this Court to decide whether it has

14    authority to enter a final judgment, and my tentative

15    thinking on that task is to find that I do; and as I will

16    explain in a few moments my intent, my tentative thinking is

17    to dismiss that claim, leaving the complaint as being a

18    sanctions motion and a claim objection, which is what I

19    believe I have core jurisdiction over.

20            As to the content matters, the Court finds that it

21    has authority -- both subject matter jurisdiction and final

22    authority to impose civil contempt sanctions.  The Court

23    agrees, and in fact it's not contended by Mr. Doble, that

24    criminal sanctions are appropriate, and the case law supports

25    that tentative thinking.

1          Does any party wish to argue the Court's tentative

2    with regard to jurisdiction?

3          MR. ANKCORN:  If I could, your Honor.  And I'll

4    start by saying I don't intend to argue.  I wanted a little

5    bit more clarification.  When you said with respect to the

6    loan modification, does that mean with respect to the tort

7    damages flowing from the claim of the loan modification or to

8    the amount of loan modification or possibly all of the above?

9          THE COURT:  I -- my tentative conclusion is

10   that -- because the loan modification cause of action is so

11   intertwined, that I have final authority to enter a judgment

12   on that case.  While I acknowledge that the issue gets more

13   debatable when you wander off into the damages claim, I still

14   believe I have that final authority.

15         MR. ANKCORN:  Okay.  Then I suppose my

16   clarification question is premature.

17         THE COURT:  Might be.  I knew I was possibly making

18   things more complicated by presaging that, but I felt that it

19   was important to note that.

20         Should I proceed to the contempt remedy portion of

21   my tentative thinking, or do you wish to argue the

22   jurisdiction?

23         MR. BARNES:  No, your Honor.

24         THE COURT:  And as I said, I am giving this

25   tentative so that the parties can either ask for

```
 1    clarification, as you did, Mr. Ankcorn, or argue the papers,
 2    although I believe the papers were very well done.
 3           The second part of the Court's analysis is the
 4    remedies available, and the Court has decided to -- as I
 5    mentioned -- to organize these by way of the particular
 6    sanctions that were requested, because in that way, the Court
 7    could go through whether there were sufficient bases under
 8    the various statutory and case law authority, and it seemed
 9    to be the best way to proceed.
10           So let me start with the Court's sanction under the
11    order to show cause, and that would be under 9011(c)(1)(B) of
12    the Court's order to show cause.  And the parties both note
13    that those fees are payable to the Court, and the parties
14    both note that those cannot be punitive; the Court lacks
15    authority to award criminal punitive sanctions; but the Court
16    does have ability under the case law to award sanctions that
17    are mild and coercive.  And in this case, the Court believes
18    that -- given the conduct that was found in the memorandum
19    decision, that an award to the court of $10,000 would be
20    appropriate and is designed to coerce compliance with the
21    rules of evidence the rules of the court and would be
22    supported by the fact that this is -- would not be the first
23    OSC that OneWest has been involved in.  I think that this
24    would be an appropriate deterrent to future transgressions,
25    and the Court's determination of the amount is reasonable in
```

UNITED STATES BANKRUPTCY COURT

1    light of how many proceedings the Court had to have, how many

2    times the Court had to say, Show me your ability to enforce

3    this loan not only in this case, but in the Mark Doble case,

4    and I believe that's appropriate.

5        Do you wish to argue that portion of the tentative,

6    Mr. Barnes?

7        MR. BARNES:  Contempt -- we're talking about

8    contempt of court, and I understand that that generally comes

9    in two flavors.  One is sort of the outrageous contempt,

10   somebody displays disrespect to the Court, yelled at the

11   Court, the bailiff removed the defendant and all that stuff.

12   We don't have that here.  The second piece is what the Court

13   describes as coercive.  The Court enters an order, it's

14   violated, the Court enters coercive sanctions sometimes in

15   the amount of, you know, a per diem amount -- you're going to

16   pay a hundred dollars a day until you comply with the court

17   order.  That's what I think the courts typically call

18   coercive.  The specific purpose of the coercive sanction is

19   to get you to do something that you have been ordered to do.

20   I think that that is different from what I would describe as

21   punitive or deterrent sanctions, which is, because you

22   did -- you don't have -- one of the ways they describe it in

23   the civil contempt context, the contemptor has the ability to

24   cause the sanction to stop by changing his behavior.  That's

25   not what the Court has described here.  What the Court has

```
 1   described here is a punishment, and I don't think that falls

 2   within what's classically called contempt.  The Court says

 3   you engaged in improper actions, and I am therefore going to

 4   punish you in whatever amount.  So I don't think the Court's

 5   contempt powers extends like that.

 6           The second point is -- and this relates to the fact

 7   that other orders to show cause have been entered in other

 8   cases.  In all those other cases, or at least the ones that

 9   I'm aware of, OneWest has been sanctioned in those other

10   cases and has had to deal with those consequences of those

11   other cases in whatever way that Court felt was appropriate.

12   For this Court to count those other ones and then punish them

13   both for the misconduct that appeared in this court and the

14   misconduct that appeared in a different court that's not in

15   the record in this court is essentially a double punishment.

16   So if the Court thinks that the contempt or the sanctions

17   claim is appropriate based on what happened in this court, we

18   could have our disagreement on that issue, but I don't think

19   there's a basis for the Court -- it's akin to the prohibition

20   of the federal rules for prior bad acts being admitted.

21   Generally those prior bad acts aren't admitted, and OneWest

22   has had to pay in some cases and has otherwise been punished

23   in those other cases.

24           THE COURT:  I appreciate your comments, Mr. Barnes;

25   I think they are good ones.  The Court's thought -- and I
```

```
 1    will look at this again before I make my final ruling -- is
 2    that, based upon the law -- Zambrano v. Tustin, which is a
 3    ninth circuit case, 885 F.2d 1473, and the Hanshaw case,
 4    which is at found at 244 F.3d at 1140 -- the ninth circuit
 5    has held that relatively mild noncompensatory fines may be
 6    necessary under some circumstances.  The Court will look at
 7    those circumstances again, because I am --
 8             MR. BARNES:  Those are bankruptcy court cases?
 9             THE COURT:  No, they're not.  I know they're ninth
10    circuit cases on the issue of defining the coercive versus
11    the compensatory and -- but I will look at that very
12    carefully -- I appreciate your comments -- before I do my
13    final ruling.
14             That takes us then to the second issue -- or the
15    second type of fees that we awarded, and that's Doble's
16    attorney's fees.  And I've made a distinction here between
17    the fees up to the date of the claim amendment and what was
18    described as -- in the defendant's brief as the fees on fees.
19    I'll get to the fees on fees second, fees on fees being fees
20    spent to recover the sanction award.  And I'm aware of the
21    ninth circuit law in a bankruptcy context of Sterver
22    (phonetic) that says they're not available, fees on fees.
23    But they may be available, and I believe they are available
24    under 1717 of the Bankruptcy Code in the Traveler's decision.
25             But as to the fees -- and we will have an
```

1    evidentiary hearing to determine the amount and

2    reasonableness of the fees as well as a further trial on the

3    prevailing party issue, which is a complex one under the

4    procedural status of this case.  But the Court believes

5    that -- as to the sanctions request and the claim objection

6    in the complaint -- that Mr. Doble is the prevailing party

7    and would thus be entitled to his fees.  The bases for that

8    award are, first of all, not Bankruptcy Rule 901(c)(1)(A),

9    which is to attorney's fees to the party instead of the

10   court, because -- and I hope I've got my 9011 section right.

11   If I haven't, trust me, the written decision will.  But

12   Bankruptcy Rule 9011 has two components.  One is the award to

13   the court, and one is to award to the party.  I don't believe

14   9011 is a proper basis for the award of those fees.  There is

15   no separate motion pending.  And the complaint, although it

16   references sanctions under 105, doesn't reference 9011, and

17   I'm not going to award them under -- to Mr. Doble in that

18   context.

19           However, there is other authority that provides for

20   award of those fees at the subsequent evidentiary hearing,

21   and that would be under Section 105, and -- because they

22   would be entirely compensatory.  And under the Court's

23   inherent power, those fees would not be awarded under 28 USC

24   Section 1927 for two reasons:  One being that the ninth

25   circuit doesn't regard bankruptcy court as a court of the

```
1    United States under -- for purposes of 28 USC 1927, and also
2    because there is no due process that was provided to the
3    lender's counsel.  And so I'm not going to award any fees
4    as -- against the lender's counsel in that regard.  This is
5    exclusively as to OneWest as an entity.  But I am also
6    awarding the fees subject to the determination on prevailing
7    party reasonableness and amount under 1717.
8              So to recap, Doble's compensatory attorney's fees,
9    I'm awarding under 105 and the inherent power, but not 1927,
10   and I'm awarding fees to some extent as well under the basis
11   of 1717.
12             I want to note at this point that, although there
13   seemed to be some confusion with regard to the Court's OSC
14   because I listed as a basis for authority a citation to 28
15   USC Section 157, and then I list 11 USC Section 105 -- the
16   Court agrees with the defendants that 1927 -- that 28 USC 157
17   is not an independent basis for sanctions; however, it is the
18   bankruptcy court's authority to exercise the subject matter
19   jurisdiction conferred on district courts under Section 1334
20   of Title XXVIII; so it's more of a vehicle to get to Section
21   105 than a separate basis for sanctions, and I'm not going to
22   award them on that basis.  So those would be -- that is the
23   Court's tentative ruling in regard to the actual attorney's
24   fees.
25             Does anybody wish to address that?
```

UNITED STATES BANKRUPTCY COURT

```
 1           MR. ANKCORN:  With respect to actual attorney's
 2    fees, your Honor, do you mean -- you had started out by
 3    saying there was a distinction between the period to the
 4    claim amendment and after.
 5           THE COURT:  Right.
 6           MR. ANKCORN:  Are we discussing prior to the claim
 7    amendment?
 8           THE COURT:  We're talking up to the date of the
 9    claim; in other words, not the fees-on-fees issue.  I use the
10    word "up to the date of the claim amendment" because I had to
11    create a distinction between fees on fees, and I don't -- by
12    using a temporal limitation -- that was more for analytical
13    purposes.  That may not be right.
14           I am aware, Mr. Barnes, that there is a factual
15    dispute about whether the debtors actually did receive the
16    $6,066 back from Mr. St. John.  I think the evidence is that
17    they didn't; but at the evidentiary hearing there will be
18    evidence on that, and the defendants would have the ability
19    to cross-examine on the amount of the attorney's fees.  But I
20    believe that both Mr. Ankcorn and Mr. Doble would be able to
21    talk about those fees.  And we'll set a briefing schedule at
22    the end of the hearing.
23           So that's the Court's ruling on the actual
24    attorney's fees.  Does any party wish to address the
25    tentative before I do my final ruling?
```

UNITED STATES BANKRUPTCY COURT

1          MR. BARNES:  Is there -- I am just sort of

2     reluctant to do this piecemeal.  Is there more?

3          THE COURT:  There is more.  I went

4     through -- there's still emotional distress --

5          MR. BARNES:  Okay.  All right.  Then let me talk

6     now.

7          THE COURT:  I could go through all of this.  My

8     fear was that you will lose -- there's so many moving parts

9     of this, that it might not enable the parties to give their

10    thoughts in the context of the ruling I just gave.

11         MR. BARNES:  No.  I appreciate that, your Honor.

12    And let me illustrate that in particular.

13         It's clear to me that the Court has the power on

14    its own initiative to award the 9011 sanctions that you

15    cited.  That's what it says, on its own initiative.  That

16    hadn't been teed up.  The order to show cause that this Court

17    entered so far is based -- this is at page 22 of the Court's

18    April 2011 memo:

19         "Based on facts and circumstances described in this

20    memorandum decision, the Court orders that defense appear and

21    show cause why they should not pay Doble's attorney fees for

22    their conduct in this action."

23         And we have acknowledged that, and we have offered

24    to compensate Mr. Doble his attorney's fees on that issue.

25         The issue of sanctions under 9011 was never

```
 1    mentioned and, as far as I know, never appeared in this

 2    court.  And although I think the Court has -- although it's

 3    clear that the Court has that power to do this on it's own

 4    initiative, it's not clear to me that the Court has the power

 5    to do that sua sponte.  But we'll see how the Court's final

 6    ruling on that plays out.

 7             THE COURT:  Mr. Barnes, let me make sure that I

 8    understand your point, because it's a good one.

 9             There are two issues with regard to the use of

10    9011.  One is that 9011 -- the Court's own motion is limited

11    to fees to it -- if the Court brings the motion under that

12    basis, the Court needs to -- the fees can't go to the debtor.

13             MR. BARNES:  Right.

14             THE COURT:  But because the Court's OSC provided

15    them to the debtor, that left a void as to due process or at

16    least did not specifically state that the Court was

17    considering awarding fees to the court.  So your

18    issue both -- your point has a due process component as well

19    as a award of sanctions under the proper section of 9011.

20             Am I understanding that correctly?

21             MR. BARNES:  The issue of awarding sanctions to the

22    court under 9011 -- whatever it was -- (a), had not been

23    mentioned before today.  And I think that before the Court

24    enters a final and appealable order on that, it's -- I hate

25    to say this, because I'm trying to get this proceeding
```

UNITED STATES BANKRUPTCY COURT

```
 1    concluded at some point.  But I think before the Court enters
 2    a final order on that, it's -- I'm issuing an order to show
 3    cause why you shouldn't be sanctioned $10,000 payable to the
 4    court, et cetera.  And at that point we can argue about
 5    whether the conduct was sanctionable under 9011.  We have a
 6    preview on how the Court feels on that issue.  And we can
 7    argue about whether $10,000 is an appropriate number, and we
 8    can argue about other things.
 9              I'm not enthusiastic about the idea of additional
10    briefing on this, but when the issue's coming up for the
11    first time at the hearing, I need to be able to address that.
12              THE COURT:  I appreciate your point, and the Court
13    will also take a look at that.
14              Frankly the Court wondered, when I looked at the
15    details of this, whether 9011 was a vehicle that was really
16    applicable at all, but because the Court raised it in the
17    order to show cause -- in other words, I may have, in my
18    order to show cause, proposed a remedy that didn't fit with
19    the section of 9011 that I used; and if that's the case, the
20    Court will take a look at it.  I appreciate that comment.
21    And I think at the end of the day, it may not matter, because
22    there are bases that are applicable.  But these sanction
23    matters are uncomfortable, I think, for everyone; but they
24    are matters of huge importance, and they need to be pursued
25    with great care.  And the Court will take a look at your
```

```
 1    issue.  And thank you for mentioning it.

 2            MR. BARNES:  I understand.  And I did not mean to

 3    say that the Court had bound itself to live in that remedy.

 4    I'm just looking at what the Court has done so far.  It's

 5    clear that the one order to show cause issued so far is

 6    focused on the attorney's fees.

 7            The second issue is Civil Code 1717, the right to

 8    attorney's fees under state law and under Traveler's.  The

 9    point we made -- and I'm not going to argue that issue.  I'm

10    just going to reiterate the issue, and the Court can buff it

11    up in its final ruling.

12            The point we made in our brief is that this dispute

13    is not the kind of dispute for which parties would

14    have -- under the contract -- would have the right to

15    compensation.  In other words, if we had sued under state

16    law -- if we had done a foreclosure action under state law,

17    we had said that the Dobles were in default, and we would

18    have the right to add those fees to the amount under the

19    contract, under 1717.  The Dobles would have a reciprocal

20    right, and if they prevail in that litigation -- if they were

21    the prevailing party in that litigation on breach of the note

22    and deed of trust, they could be a prevailing party, they

23    could be entitled to attorney's fees.  Our point was not

24    every dispute between the borrower and lender is covered by

25    attorney's fees clause, and so not every dispute gives rise
```

UNITED STATES BANKRUPTCY COURT

```
 1   to the prevailing party.

 2              THE COURT:  All right.

 3              MR. BARNES:  That's what we outlined.  And I think

 4   if all we're -- the last issue.  I didn't think there

 5   was a -- and I would ask Mr. Ankcorn to confirm.  I didn't

 6   think there was a factual issue whether Mr. St. John had

 7   actually repaid the money.  I thought that the issue was,

 8   given that he's repaid the money, how do you measure -- it

 9   adds complexity to the question how you measure Mr. Doble's

10   damages.  I mean, if Mr. Doble, and Mrs. Doble before him,

11   paid money to Mr. St. John, Mr. St. John paid the money back,

12   Mr. Doble's not out of pocket any attorney's fees.  We sort

13   of glossed over that, and we said, look, we'll pay five

14   grand.  But I don't think that one particular issue is

15   actually in dispute.  Maybe Mr. Ankcorn has better

16   information.

17              THE COURT:  The Court was left with a factual issue

18   in its mind about whether Mr. St. John had in fact paid the

19   money back.  The Court's seen lots of disgorgement orders

20   that were not repaid, and I frankly had some doubt about

21   this.  But the evidence will be what it will be.  And it

22   will -- the award would need to be a compensatory one, and

23   that whether -- if it's been repaid, how that plays out as a

24   true compensatory sanction will be addressed at the

25   evidentiary on those fees.
```

1          MR. ANKCORN:  Well, he hasn't.  Let me just clear

2      that up.

3          MR. BARNES:  I'm sorry?

4          THE COURT:  He hasn't repaid it?

5          MR. ANKCORN:  St. John has not in fact repaid it.

6      He's not had contact with my office, not anybody in the

7      family that they have in common.  He's nowhere to be seen,

8      and he's lost his license, so we don't expect any funds to be

9      coming towards that.

10         On this issue, though -- and I think it's an

11     interesting one, in the sense that if Mr. St. John were

12     standing here today, he would have a claim for his attorney's

13     fees involved in the litigation above and beyond what

14     Mr. Doble actually paid.  If an attorney takes a sum of money

15     to represent a debtor in a Chapter 13 and has a separate fee

16     agreement based on hours, which the local rules readily

17     acknowledge, with respect to an adversary proceeding and then

18     wins in the adversary proceeding, there's a sum of money

19     awarded for those attorney's fees actually expended that the

20     client didn't actually -- was not out of pocket for.  So to

21     the extent that the attorney's fees as of June-ish 2011, the

22     actual -- what we're calling actual fees -- we submit that

23     number is far in excess of $6,600.  That's the money the

24     Dobles actually paid to him to do a number of things,

25     including filing a Chapter 13, which he did perfectly

UNITED STATES BANKRUPTCY COURT

```
 1   competently.  And we're not arguing that point.
 2          THE COURT:  And, Mr. Ankcorn, I recall in my time
 3   in the legal field seeing cases that addressed whether
 4   attorney's fees award had to actually be paid or if it was
 5   okay they were just actually incurred.  But I don't remember
 6   how those cases shake out or how they shake out here, but
 7   that would be a matter for further briefing when we get down
 8   to the quantification of the compensatory damages.
 9          MR. ANKCORN:  I think, though -- and not to presage
10   my own argument, but to in some sense limit the briefing -- I
11   think that claim -- my understanding -- and I've looked at
12   this -- with respect to statutes that create attorney's fees
13   provisions or prevailing plaintiffs, which I think is
14   analogous to the 1717 argument here, but that those belong to
15   the specific attorney.  And they're not capable of offset
16   against a claim for the defendant to the plaintiff, but they
17   belong to that specific attorney; and since that attorney's
18   not here, and since your Honor has ordered my predecessor to
19   disgorge his fees, I would submit that that probably is an
20   issue.
21          THE COURT:  What we'll do -- I was going to get to
22   that.  But for purposes of quantification of the compensatory
23   damages, the Court was going to require the evidence direct
24   to be submitted by declaration and then parties available for
25   cross-examination and trial briefs on that at a hearing I was
```

```
 1    going to put out about a month.

 2              MR. BARNES:  And, your Honor, Mr. Ankcorn

 3    illustrates the question that the Court will need -- well,

 4    the Court at some point will need to clarify.  Are we trying

 5    to compensate Mr. Doble for the damages -- the attorney's

 6    fees damages that he incurred, or are we trying to compensate

 7    the lawyer who's now been disbarred and has absconded

 8    for -- I'm sorry.  He was not disbarred.  I misspoke.  Are we

 9    trying to compensate him for the fees that he earned?  Those

10    may be two different issues, and the Court's remedy may be

11    different with respect to those two.

12              THE COURT:  The Court -- for the context of what I

13    have here, the -- let's put aside the 9011 given the

14    conundrum that that presents.  But under 105 and the inherent

15    power, it's compensatory damages.  You can argue about what

16    that means, but that's what it is.  Mr. St. John is not in

17    front of me, and if he were to be in front of me, there would

18    be issues about his compliance with the court orders, so my

19    guess is he's not going to appear.  But I don't consider him

20    a party in interest here.  So it would be to whatever extent

21    Mr. Doble, under 1717 or 105 or inherent power, can assert

22    those fees; and the short answer to that is, maybe he can,

23    and maybe you agree to that; but he is an individual party,

24    he's not before the Court, and I have -- I have no intention

25    of considering his rights in this process.
```

UNITED STATES BANKRUPTCY COURT

```
 1            MR. ANKCORN:  Certainly.  Nor do I mean to assert
 2    them on his behalf by any stretch of the imagination.  I
 3    think, though, if -- Mr. Doble will tell you, as he said in
 4    two sworn declarations, his out-of-pocket costs for
 5    $6,606 -- that's it.  He's never got that back.
 6            THE COURT:  And what he's paid to you, as you've
 7    asserted.
 8            MR. ANKCORN:  That was actually after.  I believe
 9    when I jumped into the case, it was somewhat after the proof
10    of claim had already been filed; so --
11            THE COURT:  So that's part of the fees on fees
12    then.
13            MR. ANKCORN:  I think so.
14            THE COURT:  So you have to figure out what goes
15    where.  As I said, I threw a date out just because I was
16    trying to -- since the decision here is based on a number of
17    the facts, just to make it clear.  So I'm allowing fees on
18    fees, but only under 1717 if it applies.  I'm awarding fees
19    up to the day, you know, that the conduct that was alleged in
20    the complaint and in the OSC had stopped; and whatever that
21    date is might be subject to dispute, but we'll get to that at
22    the hearing.
23            MR. BARNES:  I apologize for doing this almost
24    extremely conscienceness --
25            THE COURT:  That's okay.  It's hard to keep this
```

1    organized.

2          MR. BARNES:  One of the things I would ask the

3    Court to address in the -- as it's thinking about the *sua*

4    *sponte* issues under 9011 and the Court's own initiative is

5    whether the sanctions are assessed against the client, the

6    lawyers, both joined separately, things like that.

7          THE COURT:  The Court's inclination here is to

8    award fees against the client.

9          MR. BARNES:  Okay.  Okay.

10          THE COURT:  But I will clarify that in my decision.

11    So I want to think about it before I give my final ruling.

12          We've discussed fees on fees, and so that takes us

13    to emotional distress.  The Court's analysis is that the

14    ninth circuit has not ruled whether there is an award of

15    emotional distress for civil contempt.  There are a number of

16    bankruptcy cases that suggest -- not suggest -- that hold

17    that they are recoverable and -- under 105, and the Court

18    analogizes this to the actual damages that are -- would be

19    awarded under 362(k).  And the Court notes that

20    the -- although stay violations were alleged in the

21    complaint, the allegations dealt with the Martha Doble case,

22    and the Court has dismissed those because Martha Doble is not

23    in front of the Court.  But they're not -- they were not

24    asserted in response to the scheduling orders, so the relief

25    from stay emotional distress damages are really relevant,

```
 1    from the Court's standpoint, for the purpose of analogy about
 2    providing a vehicle to award those damages under Section 105.
 3            Does either party wish to address that or seek
 4    clarification?
 5            MR. ANKCORN:  No, thank you.
 6            MR. BARNES:  No, thank you, your Honor.
 7            THE COURT:  To also be clear, I'm not awarding any
 8    for Martha Doble.  I know she filed a declaration.  She's
 9    obviously a witness to her husband's emotional distress, but
10    again she's not a party and I'm not going to do a separate
11    award for her.  That leaves --
12            MR. BARNES:  Emotional distress arising from --
13            THE COURT:  105.
14            MR. BARNES:  No, no, no.  That's the legal basis.
15    But emotional distress arising from what conduct?
16            THE COURT:  The conduct alleged in the complaint
17    and in the OSC; in other words, conduct that is compensable
18    under Section 105 as part of the actual damages.
19            MR. BARNES:  There clearly isn't in the complaint.
20    The complaint was filed the day after the petition was filed.
21    There is no way this Court has 105 power to award prepetition
22    damages for Mr. Doble's emotional distress.  105 is a very
23    flexible tool; it's not that flexible.  That is a state law
24    claim.  Because we need to keep track of the separate kinds
25    of errors and mistakes or bad faith conduct or however it's
```

1   labeled.  We need to keep them separate.  OneWest, as alleged

2   in the complaint, did something wrong with the modification

3   process; the Court's dealt with that.

4           Number two, once the lawsuit was filed -- that's

5   post-petition -- OneWest mishandled the intake of the

6   complaint and was delinquent in responding to the complaint.

7   The Court had to responded to that by entering a clerk's

8   default and then declining to vacate.

9           And the third thing the Court -- the defendants

10  did, you know, over and over was file.  They had two

11  different copies of the promissory note.  They were

12  different.  It's not just that one was endorsed and one

13  wasn't.  And they didn't file the copy of the promissory note

14  right.  So if we're talking about -- it's important that we

15  know whether we're talking about emotional distress arising

16  from the filing of the wrong copy of the proof of claim or

17  emotional distress arising from the mishandling of the

18  complaint.  I mean, we can evaluate what that emotional

19  distress is versus emotional distress from the fact

20  that -- for reasons having nothing to do with OneWest or

21  Deutsche Bank National Trust Company, his income fell and

22  he's going to lose his house.  It's important to be very

23  precise on what we think -- what the allegations are giving

24  rise to the emotional distress.

25           THE COURT:  Mr. Barnes, the Court was very

```
 1    sensitive to the odd procedural nuances of this case.  The
 2    claim was filed the day after the petition was filed.  As
 3    such it only had an entire day of post-petition conduct when
 4    the complaint was filed.  So the arguments -- and they are
 5    raised in the complaint, which seeks recovery from the
 6    Martha Doble case.  And the Court, for the additional reason
 7    that the Court will include in the final decision on this,
 8    believes that Mr. Doble has no ability to seek damages on the
 9    co-debtor stay, because it doesn't exist to protect him.  It
10    exists for Martha, and he wasn't yet a debtor.  However, in
11    the complaint -- and I'm referring specifically to paragraphs
12    1, 2, and 3.  The complaint alleges that it's for declaratory
13    relief and equitable relief in connection with the assertion
14    of the secured claim.  It sought -- it referenced Section
15    105, and it actually sought both stay relief damages under
16    362 and 105 of the United States Code for filing false proofs
17    of claim.  So to put --
18              MR. BARNES:  In the previous case.
19              THE COURT:  No.  It isn't -- let me get to my
20    point, because I -- this is something I have pondered for
21    some time.
22              The way the complaint is drafted, it seems to
23    predict with surprising alacrity that -- even though the
24    conduct had not yet occurred, that there was going to be a
25    continuing course of conduct in this case with filing false
```

```
 1    proofs of claim and false declarations, and they did refer to

 2    this case.  So we're in the procedural challenge analytically

 3    of -- we have a complaint that relates to both past and

 4    future conduct.

 5            MR. BARNES:  You can't do a complaint like that.

 6    That's not what -- I mean --

 7            MR. ANKCORN:  Sure you can.

 8            MR. BARNES:  This complaint was filed on the 29th

 9    of June, 2010, at which point no proof claim had been filed

10    in the Cesar case.

11            THE COURT:  Right.

12            MR. BARNES:  They filed -- I want recovery of

13    actual and punitive damages -- that's what it says -- actual

14    and punitive damages for filing a false and fraudulent proof

15    of claim and false declarations in violation of 501.  If this

16    Court thinks that a complaint can seek damages -- damages.

17    We're not saying enjoin them.  I mean, the Court may have the

18    ability to say, geez, they screwed it up before, I'm afraid

19    they'll screw it up again, I want the Court to enjoin future

20    conduct.  A complaint cannot file a lawsuit.  It's not a

21    conundrum.  But this complaint can't do it.

22            I'm not -- it's important to emphasize what I'm not

23    arguing.  I'm not arguing that the Court -- well, I'm not

24    arguing on a civil procedure basis that the Court should not

25    consider emotional distress arising from a variety of things.
```

```
1    I mean, we may brief up that we don't

2    think -- notwithstanding there's no law, we don't think in

3    fact the Court has the ability to award emotional distress

4    under 105.  That's a separate legal issue.  That's not my

5    point.

6              This complaint doesn't state a claim for future

7    damages for future misconduct by these defendants.  That's

8    just not what it does.  And again this is why we need to

9    focus on what the defendants did wrong and what the

10   compensation should be.

11             We know what they did wrong.  They screwed up the

12   default, and they screwed up the attachments to the proof of

13   claim consistently.  He has whatever his emotional damages

14   are that stem from those two things.  But we need to keep it

15   focused; because otherwise we'll never get this resolved.

16             THE COURT:  Mr. Barnes, I'm -- first of all, I'm

17   not sure that you couldn't file a complaint that said -- and

18   let's pick a different conduct -- that said -- maybe it's in

19   a labor law situation.  I'm just going to pick that,

20   because I -- for purposes of illustration.  But if you filed

21   a complaint and said these people -- the employer has been

22   screwing up because it hasn't been giving lunch breaks in the

23   future, and by the time of trial it would show that

24   post-petition -- post filing of complaint there was still

25   problems with the giving lunch breaks, and so you -- in the
```

```
 1   complaint you can't recover future damages.  I'm not sure of
 2   that; and frankly I was not able to answer that question in
 3   my own mind is it a matter of future or before.
 4          What the Court's concerned about is this.  The
 5   Court wrote -- the Court's read of the complaint is that it
 6   does leave the door open for future damages by using, in this
 7   case and the previous case -- just by pure allegations.
 8   Putting aside whether that's possible, I think it does that.
 9   But what the Court is trying to determine is whether, because
10   the complaint was filed the day after the petition, and
11   because the order to show cause was limited to what was
12   brought by the Court sua sponte but then spoke about
13   compensatory damages to the defendants, are -- if that means
14   that the -- that Doble doesn't have any remedy at all because
15   of that.  And when I look at the complaint to determine
16   whether it provides for these future damages and whether
17   that's the basis, I'm simply looking for and trying to
18   determine if that's a procedural basis or the OSC or whether
19   something else is necessary.  And your comment about let's
20   make this all end -- I mean, at the end of the day, what the
21   Court's ruling is, since I presaged it, is that the -- what
22   is involved here is actual attorney's fees, possible fees on
23   fees, emotional damages according to proof, and those I am
24   not aware of any authority for a sanction to offset the
25   prepetition default of 62.  In other words, to disallow it,
```

UNITED STATES BANKRUPTCY COURT

1    it might be reduced by offset, but I have no authority to

2    disallow it, and then it will be up to the Dobles to see if

3    they can reorganize their case.  The Court will go through

4    the exercise of determining but -- you know, whether the

5    complaint provides the basis for the award of actual fees and

6    the emotional distress, and it's -- one or the other, that's

7    what's in front of me.

8         MR. ANKCORN:  Your Honor, could I...

9         THE COURT:  No.  I'm going to let him finish, and

10   then you can talk.

11        MR. BARNES:  I guess here's what I'm really focused

12   on.  Suppose no complaint had been filed, and then -- that

13   eliminates the screw-ups on the default.  No proof -- no

14   adversary proceeding is commenced.  We then file a total of

15   three proofs of claim.  We finally get it right.  But the

16   first one we filed does not include the endorsed copy of the

17   promissory note.  And Mr. Doble maintains that he's been

18   damaged by that and he has attorney's fees in terms of what

19   it took to get that corrected, he's got emotional damages in

20   terms of what that would require.  I don't think he's without

21   that remedy.  I just don't think the complaint filed the day

22   after the petition would be the way he gets his remedy.

23        I'm not standing -- I'm not suggesting that he now

24   has to file another complaint.  All I'm trying to do is

25   figure out what the universe of allegations is, because we

| | |
|---|---|
| 1 | had his original complaint, which -- in those first three |
| 2 | paragraphs are the throat-clearing introductions.  He then |
| 3 | goes through and makes a bunch of allegations about what had |
| 4 | happened and the securitization of the loans and things like |
| 5 | that.  He will allege harms from the screw-ups on the final |
| 6 | proof of claim and he was emotionally damaged for whatever |
| 7 | reason.  He will allege harms from the garbled record that |
| 8 | was presented on what happened with the complaint when it |
| 9 | came in.  Deutsche Bank immediately sent it to OneWest, |
| 10 | OneWest shuttled it between Pasadena and Austin -- whatever |
| 11 | they did.  And he's going to assert the claims arising from |
| 12 | that conduct.  I'm just trying to figure out what else is at |
| 13 | issue. |
| 14 | THE COURT:  To the Court's mind, nothing else is at |
| 15 | issue.  And the complaint -- what's, of course, odd about the |
| 16 | complaint other than its date is that it objects to a claim |
| 17 | not yet filed.  But it is -- it contains a claim objection, |
| 18 | and it objected to secured status.  It deals with the |
| 19 | declaration.  And it does go forward.  And all -- as I think |
| 20 | the parties are aware, the Court has a fairly wide discretion |
| 21 | on procedural issues so long as there hasn't been a violation |
| 22 | of due process.  And I think that that is certainly not the |
| 23 | case here.  We know what we've been talking about of what the |
| 24 | problems are, and we're really to the point where we're to |
| 25 | the damages phase of it; and what the Court believes is left |

```
 1    of the complaint is really, to the extent its necessary and
 2    hasn't been superceded, for example, under Bankruptcy Rule
 3    7016, which is the pretrial process -- that can serve as the
 4    alternative for the pleadings.  And the Court could do a
 5    pretrial order based on the briefing under 7016 that says,
 6    based on the Court's rulings, this is what's left.  One,
 7    there is a claim.  It was fixed as of whatever the date was,
 8    you know -- and there's a claim that needs to be addressed in
 9    this bankruptcy.  It was objected to, and that's the
10    resolution of the objection.  There remain -- in the way the
11    claim was handled, there remain issues on attorney's fees and
12    emotional distress damages, and those will be resolved at an
13    evidentiary hearing.  And because, for reasons I am going to
14    get into, I am otherwise dismissing the complaint but for the
15    remedies that were requested under -- basically the remedies
16    associated with the claim objection when they actually came
17    up.  We could use, if the parties were so willing, just that
18    as a pretrial ruling; and otherwise the allegations of the
19    complaint would then be superceded.  I ask the parties'
20    thoughts.  Otherwise, the Court will just go through and deal
21    with the future damage issue, because I -- we do need some
22    procedural foundation for the objection to claim.  There are
23    no other objections to claim, there are no other requests for
24    sanctions by the debtor except what was in the complaint.
25    And does that suffice, particularly given the history of the
```

```
 1    this case, is really the procedural issue the Court will have
 2    to grapple.
 3              MR. ANKCORN:  If I could restate.  Because I think
 4    I'm a little in the weeds.
 5              The Court's 7016 order would essentially supplant
 6    or give some structure to the idea of what are the default
 7    damages.  It's essentially default hearing more or less.
 8              THE COURT:  I'm shaking my head because I'm trying
 9    to articulate this clearly.
10              We are in a position where we -- what is really
11    involved in this suit, because I'm going to dismiss the tort
12    damages -- where we're left with an objection to claim and a
13    request for sanctions that came about and how the claim was
14    asserted in this case.  I think you characterize it, at least
15    factually, maybe not tying back to the procedure, pretty
16    well.  And so that what really -- that disposes of the
17    complaint in the sense that all of the causes of action of
18    the complaint are then addressed.  And yes, we could supplant
19    the complaint with that.  And I think it would be
20    appropriate, because I think that it is okay to object to
21    claims by filing a complaint instead of a -- you know, a
22    motion.  There's nothing improper.  It's more procedure
23    rather than less.  The fact that this was done before the
24    claim was filed I don't think is ultimately meaningful,
25    because ultimately the claim was filed due to the problem
```

UNITED STATES BANKRUPTCY COURT

| 1 | that they were expecting, so it's not as though it were wrong |
| 2 | in its prediction.  So really what we're left with is -- we |
| 3 | have eliminated much of what was in the complaint, and we're |
| 4 | really left with:  The claim's been fixed; what were the |
| 5 | damages from the filing of the wrongful proofs of claim? |
| 6 | MR. BARNES:  My suggestion was going to be to see |
| 7 | if Mr. Ankcorn and I can figure something out before we get |
| 8 | to a pretrial order.  Because I understand the refashioning |
| 9 | of the pleadings under 7016 -- whether we do it in an |
| 10 | adversary proceeding or contest the matter, it doesn't really |
| 11 | matter.  But Mr. Ankcorn illustrated one of the reasons I |
| 12 | want to get away from the complaint.  Because as I've |
| 13 | indicated, I think it's a little bit of a stretch to say that |
| 14 | the complaint states a claim for damages that will arise from |
| 15 | future conduct. |
| 16 | But even if you go -- even if you accept that, you |
| 17 | can't then default us for not responding to a complaint for |
| 18 | damages that we hadn't yet imposed.  The point |
| 19 | is -- Mr. Ankcorn justifiably wants to make this a default |
| 20 | hearing.  And the answer is no.  We're done with the default. |
| 21 | The stuff that we've defaulted on is by the boards.  We're |
| 22 | talking about misconduct after the default occurred, after |
| 23 | the default was entered.  We didn't file our proofs of claim |
| 24 | until -- you can't default us and say this applies for |
| 25 | anything you ever do the future.  I think that's a little bit |

1    the tug of war here.

2         THE COURT:  To clarify -- I think that your

3    characterization, Mr. Barnes, is accurate.  The allegations

4    in the complaint and the default -- the evaluation of the

5    default has to occur when that happened.  Having said that, I

6    don't -- so that things that occurred after that point are

7    not subject to the same default.  The complaint may have

8    viability, but I don't think that the standards for resolving

9    a default judgment are really applicable anymore, just reason

10   for due process.  In other words, you can certainly allege

11   future conduct, but you can't allege a default standard for

12   actions that occurred after the default.  In other words, the

13   parties should have the right to deal with those facts as

14   they later develop.  So I believe that there is a procedural

15   basis in the complaint but that it really has to do

16   with -- call it amendment according to proof after the fact

17   as opposed to the default itself.  What that would mean is

18   that what I was intending to do in any event under Bankruptcy

19   Rule 7055, which is entry of default judgment, is to allow

20   the defendants to present evidence -- you know, to contest

21   the emotional distress damages and to present evidence to

22   contest the attorney's fees, because that's really all we

23   have left in this lawsuit.  And maybe you can work it out.

24   I'm delighted that you're willing to give it a try.  I

25   otherwise have to do my job and will, which is to figure out

```
 1    what right procedural way to call this.  But I do agree that,

 2    even though I believe future damages can be alleged, they

 3    shouldn't be subject to the same default, but I also don't

 4    think it matters in the grand scheme of things.

 5              MR. ANKCORN:  And I think your Honor's right.  I

 6    think that if -- from a procedural standpoint -- and again

 7    this -- Mr. Barnes wants to separate this into as many pieces

 8    as he can, and I don't think it's that susceptible -- if

 9    someone argues in a complaint that there's a course of

10    conduct by a business that's causing him harm and gets a

11    default judgment, in other words, he wins by whatever

12    mechanism, the amount of those damages -- you take your

13    victims as you find them.  And Mr. Doble will tell you about

14    the months, if not years of conduct and the struggles that he

15    and his wife have had with this bank over exactly the issues

16    raised in the complaint.  And so to the extent that we can

17    divide these between pre- and post-petition conduct -- number

18    one, I don't think we can as a matter of fact.  The emotional

19    distress damages are not that --

20              THE COURT:  But it doesn't matter -- from the

21    standpoint of the proof that the Court is going to consider

22    here, based -- don't think it matters.  His emotional

23    distress, he -- what period the emotional distress arose

24    under is going to be an issue --

25              MR. ANKCORN:  I think it goes to amount, your
```

1    Honor.

2          THE COURT:  Let me finish my point.

3          What do you believe is the basis for the

4    prepetition emotional distress?

5          MR. ANKCORN:  I believe that the distinction

6    between prepetition and post-petition is so slip -- quite

7    honestly, it's going to be meaningless.  There's a course of

8    conduct between the banks and the Dobles, and all of that

9    goes on for months and months and months about what they did.

10    So the conduct that exists post-petition -- filing the false

11    proof of claim -- has to be seen in context of what does this

12    mean to Cesar Doble.

13          THE COURT:  I agree.  As the Court sees it, one,

14    I'm not going to rule at this point about the scope of the

15    emotional distress.  We're going to get to that when we get

16    to the emotional distress.

17          My rulings, though, are that I'm not -- the

18    Martha Doble case and her claims are not before me.  She's

19    not a party.  To the extent Mr. Doble can tie his emotional

20    distress to acts that occurred to whatever time period

21    legally, fine, but they're having to do with the assertion of

22    the secured claims in this case --

23          MR. ANKCORN:  Sure.

24          THE COURT:  -- and as part of his objection.

25    Exactly how -- we'll deal with that in a motion *in limine* if

1    possible, but the procedural basis -- it has to do with these

2    claims in this case.  And that's how I see that.

3            Mr. Barnes.

4            MR. BARNES:  I know the Court is working towards a

5    comprehensive written explanation of this.

6            THE COURT:  Which I'd be happy to avoid, because

7    I've never seen anything like this.  But the facts are what

8    they are, and we have to go through them, so I will do what I

9    have to.

10           MR. BARNES:  I appreciate that.  I just want to

11   make our sort of initial or tentative view clear.  And

12   Mr. Ankcorn distinguishes -- the distinction between pre- and

13   post-petition matters.

14           THE COURT:  Uh-huh.

15           MR. BARNES:  And it matters with respect to this

16   Court's authority.

17           THE COURT:  Exactly.

18           MR. BARNES:  The *Stern* commentators call it estate

19   enhancing.  And estate enhancing claim --

20           THE COURT:  Augmenting, I think --

21           MR. BARNES:  Augmenting.  Even better.  An estate

22   augmenting claim for our prepetition conduct is a *Stern v.*

23   *Marshall* claim.  And we don't convert that into a

24   post-petition claim over which this Court would normally have

25   authority.

UNITED STATES BANKRUPTCY COURT

```
1              THE COURT:  And you can --
2              MR. BARNES:  I'm sorry.  I'm not attempting to
3    persuade the Court.  I'm simply stating the position that we
4    will take.  And so, for example, when he says, I got the
5    run-around prepetition and I suffered emotional distress as a
6    result, we're going to say this Court does not have authority
7    to say final judgment on that issue.  The Court may disagree.
8    Mr. Ankcorn may disagree.  I just want to make sure that,
9    from our perspective, that distinction is a big one.
10             THE COURT:  I agree.  And my jurisdiction begins
11   with this case.  But to the extent that the prepetition
12   conduct is relevant to the emotional distress damages that
13   occurred in this case, I'm going to consider it; and to the
14   extent the emotional distress damages occurred before this
15   case, I'm not.  Now, that distinction is going to be real
16   tough to apply, but we'll have to work our way through it,
17   and we'll make the rulings at that time.  And the Court's
18   ruling, at least for now, subject to the parties agreeing to
19   something that works better for them, is that the Court
20   believes as a matter of procedure that the Court has the
21   authority, from the context of the complaint, to consider the
22   proofs of claim that were filed in this case, which were
23   subject to objection before they were filed, but it turned
24   out that the objections were valid.  And to the extent that
25   that caused emotional distress damages for Mr. Doble in this
```

1  case, I will consider them, and I will consider evidence

2  regardless of when it occurred.  And I will allow -- because

3  this conduct occurred after the default, I will allow the

4  defendants to present evidence in -- to contest that and also

5  to challenge it by cross-examination.  And if you are unable

6  to articulate in a way that works for you, I will write that

7  up.

8            MR. ANKCORN:  I understand, your Honor.

9            THE COURT:  That's how we'll go forward on that.

10           Now let me briefly discuss the complaint, what's

11  left; in other words, the nonobjection to secured claim

12  causes of action, which basically -- what was left was the

13  fifth cause of action for a loan modification.  And the Court

14  believes that there is no cause of action.  What was left in

15  that was whether there were a breach of the covenant of good

16  faith and fear dealing, which is alleged by defendants to

17  violate *Pollock*, which is the Home Owner's Loan Act of 1933.

18  The problem -- while I do not believe that a whole lot would

19  preempt a valid breach of contract claim, because the CFR

20  Section 560.2(b) left open common law causes of action such

21  as breach of contract, I nevertheless believe that there is

22  no such cause of action based upon the evidence presented to

23  me by Mr. Doble as well as the allegations in the complaint.

24           The Court also takes judicial notice of the Home

25  Affordable Mortgage Program, which has two components at the

```
 1    time that the Dobles were in negotiations for it.  It starts
 2    out with a trial program, and in fact the documents show that
 3    there's a trial program agreed to.  And it required a timely
 4    third payment, and the timely third payment was not made.
 5    And so when the debtor received the -- on May 27 the letter
 6    dated May 6th, which purported to be the final loan
 7    modification documents, although the final loan modification
 8    documents were not attached, the final loan modification was
 9    again specifically contingent upon the trial period payments
10    being made on time, and they were.  And the Court doesn't
11    find that the failure to make a timely payment was excused
12    either by his personal difficulty or by the confusion with
13    the lender, because OneWest was the only party.  IndyMac was
14    the one sending the documents in both cases.  So the Court
15    doesn't believe that there is a violation of breach of
16    contract here that renders irrelevant whether HAMP was
17    violated, because I don't find that there was a violation,
18    and also renders irrelevant the Court's view that preemption
19    doesn't apply.  The Court would find, in any event, that the
20    consumer -- the CLRA is not applicable for the reasons that
21    the Supreme Court, in a recent decision -- 2009 decision,
22    held that the work of insurance -- life insurance agents
23    processing policies and helping them select policies is not
24    providing a gooder service within the scope of the CLRA; and
25    that is analogous to a loan context, and so the Court does
```

```
 1    not find that there are any CLRA claims that apply to
 2    mortgage loans, and the district has court so held.  So with
 3    that, I don't believe that even considering the evidence
 4    presented by Mr. Doble, without response by the
 5    defendants -- because that still is subject to default claim,
 6    I don't see that there's a viable cause of action for a
 7    failed loan modification.
 8            MR. ANKCORN:  Could I be heard briefly on that,
 9    your Honor?
10            THE COURT:  Yes, you can.
11            MR. ANKCORN:  Your Honor's right that the HAMP
12    requires three timely loan modification payments.  And I
13    think the facts are clear that that third payment, which was
14    due somewhere around March of the year in question --
15            THE COURT:  It's actually due on April 1st.
16            MR. ANKCORN:  April 1st, 2010, I believe.
17            THE COURT:  It was.
18            MR. ANKCORN:  -- that Mr. Doble did not make that.
19    However, OneWest reminded him in May and said, hey, how about
20    that third payment?  That's still out there.  And he spoke
21    with the rep, who said get it in as soon as you can, gave him
22    an extra few days to run to the bank and get the certified
23    check.  Mr. Doble did that, retained a copy of the certified
24    check, retained a copy of proof of overnight mailing that
25    went directly to them.  And so that third payment was made
```

 1   and was made timely by the arrangement that he had with

 2   OneWest.  After that they say, oh, no.  Sorry.  You don't

 3   have a loan modification.

 4          THE COURT:  And I will look at this again before I

 5   do my final ruling.  But what you're saying is it

 6   isn't -- that the discussion that Mr. Doble had with the

 7   IndyMac representative gave an oral extension of the due date

 8   for that third payment.

 9          MR. ANKCORN:  Yes.  In fact I think the letter that

10   they sent the day before the response was due -- and I'll

11   refrain from making comment on that.

12          THE COURT:  I've read the letter.  I don't think it

13   supports that.  So in the Court's view, it will have to be

14   based on an oral discussion.  And I will look at that again.

15          MR. ANKCORN:  At the very least, it set a due date

16   of -- pay us by May 27th, whatever it was, which is some

17   two months after the original day, which is April 1.  So by

18   the letter, he's at least got until May 27th.  And then

19   there's an oral extension, we argue, from May 27 to the time

20   it was actually made, which was June 3 or 4.  It was the

21   following Tuesday -- a Friday was the due date.  It was the

22   following Tuesday when he sent the letter.  That's our

23   argument.  There was an extension of his contract to give him

24   the opportunity to make that third payment.  He made that

25   third payment timely.  OneWest months later said, we never

1    got that third payment.  But he's got the certified check in

2    his hand -- copy of the certified check.  That's the basis of

3    us saying, look, a deal's a deal.  He fulfilled his end of

4    the bargain; OneWest, IndyMac should be held to their end of

5    the bargain, and he should have a modified loan.  And that

6    has consequences for -- as your Honor began this sometime ago

7    this hearing, saying that has consequences for the rest of

8    the bankruptcy case.

9              THE COURT:  I appreciate your comments on that.

10   That's the tentative thinking.  I appreciate the parties'

11   comments, which have clarified that.  I am going to -- as

12   I've said, I will continue working on a written ruling,

13   which -- with this case, and I will look particularly at the

14   dismissal of the fifth cause of action.  I will also look at

15   the applicability of 9011 under the unique circumstances of

16   this case.  And I will also look at the issue of the

17   complaint's ability to allege future conduct; and secondly,

18   perhaps more importantly, what that does with regard to the

19   default given that the conduct occurred after the fact,

20   although I do believe that in a default context under

21   Bankruptcy Rule 7055, I have a lot of discretion that needs

22   to be exercised in favor of due process.  And I think it

23   would be a gross violation of due process to default

24   defendants for conduct that didn't happen.  So that's why I

25   think that the process is not going to change, but I'm going

 1   to look at -- I'm going to look at the reasons for that.

 2          Now, if the parties have a way to deal with this

 3   that you'd like to advise me of, I'd like you to advise me a

 4   scheduling order that you might agree to in any way.  Please

 5   let me know by noon on Friday, because I think I'm going to

 6   try to get this out by early next week.  I'm also going to

 7   set the evidentiary hearing on the fees and on the emotional

 8   distress damages.

 9          How much time do you need to prepare this?

10          MR. ANKCORN:  To prepare for the evidentiary

11   hearing, your Honor?

12          THE COURT:  Yes.

13          MR. BARNES:  Are we submitting law on this issue?

14          THE COURT:  Yes.  Here's the process that I would

15   recommend, because it seems to work well in judge trials,

16   which is that the declarations -- that you would submit your

17   affirmative case with your attorney's fees requested and the

18   emotional distress and an explanation, together with a trial

19   brief, that you have a chance to respond to that, say two

20   weeks later, and that we have trial out six weeks or sometime

21   in January at a time convenient for the parties.  And the

22   issues will be limited to -- unless the Court changes its

23   mind on the modification, the issues will be limited to

24   emotional distress and the attorney's fees, both actual and

25   fees on fees.

```
 1          So does that -- how much time do you need,
 2   Mr. Ankcorn?  Because your papers will start the filing.  I
 3   then give you two weeks to respond, and then we'll have a
 4   trial.
 5          MR. BARNES:  It pains me to say this, but we may
 6   need to depose his declarant.  So probably three weeks will
 7   give us a little more flexibility, especially if we start to
 8   head into the holidays.
 9          THE COURT:  We're going to pick a date in January
10   and move backwards.
11          THE CLERK:  Your Honor, how much time do we need?
12          THE COURT:  I'm going to set aside the whole day
13   with the hope that we don't need it.
14          THE CLERK:  Your Honor, how's January 16th, which
15   is a Wednesday?
16          THE COURT:  Is that convenient for the parties?
17          MR. BARNES:  Yes.
18          THE COURT:  If it doesn't work for a client or
19   something, feel free to call.  We'll go with that for right
20   now.  I'm going to give you, Mr. Ankcorn -- how about
21   sometime -- I'll give you a month.
22          MR. ANKCORN:  Mid-December.  That's fine, your
23   Honor.  Thank you.
24          THE COURT:  I was actually going to pick November.
25          MR. ANKCORN:  You mean a month from today?  I
```

```
 1   thought you meant a month back of the hearing.
 2             THE COURT:  No.  I'm going to give Mr. Barnes time
 3   to do his discovery if he wants to.
 4             MR. ANKCORN:  How about the 16th, your Honor?
 5   That's the Friday before the Thanksgiving week.
 6             THE COURT:  That will be fine.
 7             Mr. Barnes, that will require your papers to be
 8   filed -- how about by the 21st of December?
 9             MR. BARNES:  Oh, sure.
10             THE COURT:  And then we will have a pretrial -- and
11   what I do at pretrial as try to solve evidentiary issues as
12   well as legal issues that might come up so we can narrow the
13   scope of evidence.  We will have pretrial January 10th at
14   10:00 a.m.
15             MR. BARNES:  Do you want actual motions in limine,
16   or do you want us to just argue them?
17             THE COURT:  You can just argue them.
18             THE CLERK:  Your Honor, may I say, for
19   January 16th, the trial starts at 9:30.
20             THE COURT:  It would start at 9:30.
21             MR. BARNES:  I'm sorry.  It was trial on the 16th?
22             THE COURT:  Yes.  It starts at 9:30.
23             MR. BARNES:  And the time of the pretrial on the
24   10th?
25             THE COURT:  The pretrial would be at 10:00 o'clock.
```

Case 10-90308-MM    Filed 10/31/12    Doc 97    Pg. 49 of 50

1          MR. BARNES:  Thank you very much.

2          THE COURT:  All right.  Thank you.

3                         -oOo-

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES BANKRUPTCY COURT

1    STATE OF CALIFORNIA

2

3    COUNTY OF SAN DIEGO

4

5              I, PATRICIA A. CALLIHAN, COURT REPORTER, DO HEREBY

6    CERTIFY:

7              THAT I REPORTED IN SHORTHAND THE PROCEEDINGS HELD

8    IN THE FOREGOING CAUSE ON THE 17TH DAY OF OCTOBER, 2012; THAT

9    MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING UNDER MY

10   DIRECTION; AND THAT THE FOREGOING TRANSCRIPT CONTAINS A

11   CORRECT STATEMENT OF THE PROCEEDINGS.

12

13             DATED THIS 24TH DAY OF OCTOBER, 2012.

14

15                         /s/ Patricia A. Callihan
                           Patricia A. Callihan, CSR No. 13375
16

17

18

19

20

21

22

23

24

25